JACKSON
v.
RIGHTMYRE.

JAMES JACKSON, *ex dem.* JACOB G. KLOCK, GEORGE G. KLOCK, and others, plaintiff,

*against*

HENRY RIGHTMYRE, defendant.

Where a special verdict stated, that A. and others, being some of the proprietors of a patent, in 1763 released part of the patent to certain *Indians* in trust, in which release K., another of the patentees, refused to join, and that in 1764, K. and the other proprietors were seised of the patent, and made partition of the whole, including the allotment released to the *Indians*, it was held, that the jury having found the fact of seisin, without explaining how the proprietors became reseised, it was to be presumed, that they were lawfully reseised, and that any intendment might be made that the fact might require; and that K. having, with a knowledge of the release, united in the partition, and having afterwards made a subdivision of the lot drawn by him with another proprietor, could not question the validity of the partition.

THIS was an action of ejectment, which was commenced in *October* term, 1808, in the court below, and was brought to recover the possession of an undivided share of lot No. 4, in the sixth allotment of a tract of land, situate on the *Mohawk* river, in the town of *Minden*, in the county of *Montgomery*, (now the town of *Danube*, in the county of *Herkimer*,) granted to *Abraham Van Horne* and others. The cause was tried in *August*, 1814, when a verdict was taken, subject to the opinion of the Supreme Court, on a case to be made, which either party had leave to turn into a special verdict. The case was argued in the Supreme Court, and in *May* term, 1816, judgment was rendered for the defendant below. The case having been turned into a special verdict, the plaintiff below brought a writ of error. The facts which appeared in evidence, on the trial, have already been fully stated in the report of this case in the Supreme Court; and as far as they relate to the points here discussed, are stated with sufficient minuteness, in the opinion delivered by the Chancellor, in this Court. For the facts of the case, and the opinion of the Court below, see 13 *Johns. Rep.* 367—377.

*Woodworth,* for the plaintiff in error, contended, 1. That the partition in 1764 was inoperative and void, as far as

Although a prior possession under a claim of right, and not voluntarily abandoned, will prevail in ejectment over a subsequent possession, acquired by mere entry, without any lawful right, yet where the subsequent possession of the defendant is acquired by a recovery and execution in ejectment, his entry is a lawful entry, and affords a better presumption of right, than the prior possession, although the judgment was obtained by default; and the party who brings a second action of ejectment after being ousted by a writ of *habere facias possessionem*, must produce additional evidence of title, and not rest upon his possession alone.

respected the sixth allotment; of their interest in which,
several of the parties to that partition had previously divest-
ed themselves. There seems, on the first view, to be some
inconsistency and contradiction in the finding of the jury in
relation to the lands which were the subject of the partition.
In the first place, they say " that when the aforesaid parti-
tion was made, *George Klock* was seised in his demesne
as of fee, of three undivided sixteenth parts ; *Jellis Fonda*
was seised in like manner of one undivided sixteenth part ;
*Philip Livingston* the younger, was seised in like manner
of three undivided thirty second parts ; *John Duncan* was
seised in like manner of five undivided thirty second parts ;
*Walter Rutherford* was seised in like manner of five undi-
vided thirty second parts, and *William Burnet Brown* of one
undivided fourth part of the lands included in the said pa-
tent, as tenants in common." And, a few sentences after,
they find, " that on the 22d day of *November*, 1763, the said
*Philip Livingston, William Livingston, Walter Rutherford,
John Duncan*, and *William Burnet Brown*, stiling themselves
part owners of the land in the said patent, released all the
lands included in the sixth allotment of said patent, to three
*Indians*, and their heirs, in trust for themselves, and all the
rest of the native *Indians* belonging to the *Canajoharie* cas-
tle, and their heirs forever ; so that neither the grantors, nor
their heirs, nor any other person for them, or in the names,
right, or stead of any of them, should, or would, by any means
or ways, thereafter have, claim, challenge or demand, any
estate, right, title, or interest, in or to the said premises, or
any part thereof; but from all and every action, right, es-
tate, title, interest or demand, of, in, or to the said premises,
or any part thereof, should be utterly excluded and debar-
red." How then could the proprietors, who in 1763, in
such a solemn manner, released all their title in a part of the
patent, no reconveyance, no grant from the releasees appear-
ing, become seised, in the very next year, of undivided in-
terests in the entire patent ? It is impossible ; and unless
some rule of construction can be discovered, by which the two
clauses may be reconciled, one of them must be rejected ;
for, unexplained, they are too palpably incongruous to sub-
sist together. We are to look to the intent ; the different

IN ERROR.
.......
ALBANY,
January, 1819.

JACKSON
v.
RIGHTMYRE.

parts of the special verdict must be compared together, and taken in such connexion that each may have meaning and effect, and none be insensible or void. " The intent," says the Chief Justice, in delivering the opinion of the Court, in *Jackson*, ex dem. *Ludlow and others*, v. *Myers*, (3 *Johns. Rep.* 388. 395.) " when apparent, and not repugnant to any rule of law, will control technical terms, for the intent, and not the words, is the essence of every agreement. In the exposition of deeds, the construction must be upon the view and comparison of the whole instrument, and with an endeavour to give every part of it meaning and effect." To apply the principle to the present case : *Philip Livingston*, and the other part owners who joined in the release of the sixth allotment, still continued seised, as tenants in common with *Klock* and *Fonda*, of the residue of the patent, and might lawfully partition it among themselves. It is not to be presumed, that they undertook to appropriate to themselves the property of others. The intent of the special verdict, collected from a " view and comparison of the whole," and necessary " to give every part of it meaning and effect," is that the releasors were seised of all the lands in the patent, excepting such as they had previously granted ; that is, of all except the sixth allotment. To render the partition valid, the *Indian* grantees should have been parties to it. As they were not parties, it could not affect their rights, and, consequently, the partition deed could vest no estate, in severalty, in *Klock*, and the plaintiff is not estopped from setting up the present claim. (*Jackson*, ex dem. *Ostrander*, v. *Hasbrouck*, 3 *Johns. Rep.* 331. *Jackson*, ex dem. *Antell*, v. *Brown*, 3 *Johns. Rep.* 459. *Jackson*, ex dem. *Smith*, v. *Vrooman*, 13 *Johns. Rep.* 488.) *Livingston*, and the other releasors, were not tenants in common with *Klock* of the sixth allotment, and thus being tenants in common of only part of the land intended to be divided, the partition was void. (*Jackson*, ex dem. *Wynkoop*, v. *Myers*, 14 *Johns. Rep.* 354.) It has been decided, that the title of these very *Indians*, was to be presumed to have become extinct ; it is not a subsisting title which can be set up in bar of the plaintiff's action. (*Jackson*, ex dem. *Klock and others*, v. *Hudson*, 3 *Johns. Rep.* 375.)

2. The lessors of the plaintiff have shown a prior posses-
sion in their ancestor, *George Klock*, who, in 1783, demised
different parts of the sixth allotment, for terms of three
years, reserving a yearly rent, to tenants who continued
in possession until 1790, when they were ousted by writs of
*habere facias possessionem* issued on the judgments by
default, which are the foundation of the defendant's title.
If the persons who instituted, and recovered in those suits,
or those from whom they derived their title, claimed as
tenants in common with *Klock*, their possession has not
been adverse to his. (*Jackson*, ex dem. *Teller and others*, v.
*Burtis and Woodward*, 9 *Johns. Rep.* 174.) An adverse pos-
session must commence under a claim and colour, at least,
of title. (13 *Johns. Rep.* 120.) It does not appear under
what title those plaintiffs claimed : *non constat*, that they
had any : their judgments were obtained by default, and
the rights of the parties never came into discussion. The
whole question, in effect, resolves itself into this : shall a
prior prevail over a subsequent possession, and entitle the
plaintiff to a recovery, where no additional circumstances
of right are shown on either side, to fortify that possession ?
The affirmative has been so solemnly decided, that the
point cannot now admit of debate. A prior possession is
*prima facie* evidence of right, as was held in the case of *Smith*
v. *Lorillard*, (10 *Johns. Rep.* 338. See also, *Jackson*, ex
dem. *Murray and Bowne*, v. *Hazen*, 2 *Johns. Rep.* 22.
*Jackson*, ex. dem, *Duncan and others*, v. *Harder*, 4 *Johns.
Rep.* 202. *Catteris* v. *Cowper*, 4 *Taunt.* 547.) provided the
prior possession was not voluntarily abandoned, and the
subsequent possession of the defendant was acquired by
mere entry, without any lawful right. The present case pre-
cisely agrees with that. Here the prior possession was not
voluntarily abandoned ; it was relinquished under the com-
pulsion of legal process, and the entry, under that process,
was without lawful right ; for no right was established by
the judgments in ejectment. Notwithstanding the expira-
tion of the leases, the possession must still be deemed to
have continued in the lessor. The holding over of a tenant,
after the expiration of the term, is not evidence of an ad-
verse possession. (*Brandt*, ex dem. *Fitch and others*, v.

IN ERROR.

ALBANY,
January, 1819.

JACKSON
v.
RIGHTMYRE.

*Marshall*, 1 *Caines' Rep.* 394.) Although the lease be expired, the lessee will be regarded as holding by consent of the original landlord, and as his tenant at will; unless he can show, that since the expiration of it, he has acquired a new title, either from, or paramount to, that of the party under whom possession was taken. (*Ibid.* 401.) The utmost effect of the judgment and execution under which the defendant entered, was to prevent his entry from being regarded as a trespass. A person who is turned out of possession under a judgment by default, may bring a new action of ejectment, and recover, on showing his prior possession. (*Jackson*, ex dem. *Wright and others*, v. *Dieffendorf and Zoller*, 3 *Johns. Rep.* 269.) And in the words of Lord *Mansfield*, there cited, a recovery in ejectment " is a recovery of the possession, (not of the seisin or freehold,) without prejudice to the right, as it may afterwards appear, even between the same parties. He who enters under it, in truth and substance, can only be possessed according to right. If he has a freehold, he is in as a freeholder. If he has a chattel interest, he is in as a termor. If he has no title, he is in as a trespasser. If he had no right to the possession, then he takes only a naked possession." So, it is said by Mr. J. *Platt*, (13 *Johns. Rep.* 234,) that " the action of ejectment is only a possessory remedy in favour of a person having a right of entry ; it does not establish and conclude the question of title, as in real actions." Again ; the entry of the defendant, although it may not be punishable as such, was in fact a trespass, a mere intrusion upon the land ; and a person entering under these circumstances, cannot protect himself by an outstanding title. (*Jackson* v. *Harder*, 4 *Johns. Rep.* 202.) It was a forcible trespass or intrusion, made under process of law, which would admit of no opposition or resistance ; and, as was observed by the Chief Justice, in *The People* v. *Leonard*, (11 *Johns. Rep.* 509.) if the lessor shows himself in the peaceable possession of land, and that he was forcibly dispossessed, it will be sufficient to entitle him to recover possession, and the defendant will not be permitted to set up title to defeat it. If a defendant sets up an outstanding title existing in a stranger, it must be a present subsisting title ; it must be one that is living and

operative, otherwise the presumption will be that it has be-
come extinguished. (3 *Johns. Rep.* 386. *Bull. N. P.* 110.)
The plaintiff claims to recover the possession of the entire
premises, and not merely of an undivided part.

*Henry* and *Van Vechten*, contra. 1. In answer to the first
point, the counsel relied on the facts, that *Klock* knew of
the release in 1763, though he refused to execute it, and
that in 1764, a partition was made in the names of the ori-
ginal patentees, being the mode required by law, (*Laws.*
*N. Y., Van Schaick's Ed.* 412.) which afterwards, in 1767,
*Klock* confirmed by his partition with *Fonda.* The con-
struction which it has been attempted to give to the special
verdict is unfounded. It rests upon an analogy which has
no existence. A contract (and the case referred to is the
case of a contract) is entire, and the different parts must
be taken in connection; but in a special verdict the jury
find separate and distinct facts. They have found that in
1763, a deed was executed to the *Indians*, but that, not-
withstanding that deed, the parties, in 1764, were seized of
the lands; not of a part of the lands, but of the whole.
How they became so seised is not found. It may be that the
*Indian* title was deemed inoperative; or, perhaps, it was
released by the *Indians* before the partition, and, in that
case, the sanction of the government to the reconveyance
may be presumed. This is a reasonable intendment, which
ought to be supported. The object of a verdict is, that it be
decisive between the parties; and to give it that effect, it
shall be favourably construed. Verdicts are not to be taken
strictly like pleadings; on the contrary, the Court will col-
lect the meaning of the jury, if they give such a verdict that
it can understand them. (*Runnington on Eject.* 247.) Here
the fact of seisin is expressly stated, and unless a reconvey-
ance be presumed, the finding of the jury was false. The
*Indians* were capable of receiving a title, which was a sub-
sisting title until released. All the parties being seised of
the whole of the land, the partition was valid, and operated
as an estoppel on the parties, and all persons claiming under
them. (*Jackson*, ex dem. *Ostrander*, v. *Hasbrouck*, 3 *Johns.*
*Rep.* 331. *Jackson*, ex dem. *Antill and wife*, v. *Brown*,

IN ERROR.
.......
ALBANY,
January, 1819.

JACKSON
v.
RIGHTMYRE.

3 *Johns. Rep.* 459. *Jackson*, ex dem. *Wynkoop*, v. *Myers*, 14 *Johns. Rep.* 354.)

2. Here the defendant entered peaceably, by colour of title, and under judgment of law, and, therefore, mere priority of possession is not sufficient to entitle a party to a recovery against him. Every plaintiff in ejectment must show a right of possession; (*Burr. Rep.* 119. *Runnington on Eject.* 58.) and he must recover upon the strength of his own, not the weakness of the defendant's title. (*Burr. Rep.* 2487.) A possession taken by the plaintiff without claim of title, is of no avail. (1 *Caines' Rep.* 190. n. *a.*) It is further requisite that such prior possession should be clearly and unequivocally proved; but there is nothing in this case from which the possession of *Klock* can be inferred, except the simple circumstance of the execution of leases in 1783. And it has been held, that the payment of taxes, and the execution of partition deeds, were not evidence of an actual possession, though they might show a claim of title. (*Jackson*, ex dem. *Ludlow and others*, v. *Myers*, 3 *Johns. Rep.* 388.) It is only against a mere intruder or trespasser, that a prior possession under colour of title, is sufficient ground for a recovery in ejectment. (*Jackson*, ex dem. *Duncan and others*, v. *Harder*, 4 *Johns. Rep.* 202.) The recovery in ejectment must be regarded as presumptive evidence of right, and by it the lawful possession is transferred; otherwise an action of ejectment would be a nugatory ceremony, an absurd and idle farce. It is true, that the right of possession may be litigated again; but still the judgment is an estoppel on the defendant to deny the plaintiff's title in an action for the mesne profits. Hence, it must be inferred, that after a recovery in ejectment, a mere naked prior possession, uncoupled with any evidence of a right of possession, is not sufficient to entitle to a recovery against one who has entered under the judgment. Possession is evidence of title, ; for it is to be presumed, that the party who has possession has it rightfully; but that presumption ceases when title appears on the other side. For eighteen years from the time when they were ousted by writ of *habere facias possessionem*, the plaintiff's lessors have acquiesced in their own eviction, and suffered the defendant quietly to

IN ERROR.
.......
ALBANY,
January, 1819.

JACKSON
v.
RIGHTMYRE.

hold the land. They have permitted a period to elapse almost long enough to constitute a conclusive bar to their right of entry: and shall they now, after lying by, almost to the moment when nothing could avail them short of a per-fect right of property, come in and rest upon a possession, stripped and devested of all right, against a possession un-interrupted for years, and commenced under the high pre-sumption of title which the judgment of law affords?

The plaintiff now sets up a claim to the whole of lot No. 4. in the sixth allotment; and yet, according to the special verdict, the action was commenced to recover the posses-sion of an undivided share of that lot. The jury, too, has found, " that the lessors of the plaintiff and their ances-tors claimed title to the premises in question under the let-ters patent therein before mentioned, and until the trial of this cause asserted their right to recover the same by virtue of such title and not otherwise." Under the patent they could only claim an undivided part. On what pretence, then, can they extend their demand to the entirety? *Klock* himself, in 1783, asserted a right to no more than part: he never committed or pretended to commit a disseisin: and so far from there being a disseisin, with five years possession and a descent cast to toll the defendant's entry, *Klock* was never in actual possession. All the possession which he ever had, consisted merely in the giving of leases, for three years, to persons already in the occupation of the land.

*T. A. Emmet*, in reply, denied that it was to be inferred from the special verdict, that *Klock* claimed title only as tenant in common. The words must be intended to mean a claim of title co-extensive with his possession, which was of the entire sixth allotment in severalty. His leases were in severalty, and not of an undivided right: and though at first he may have claimed as tenant in common, yet it is to be inferred from his possession in 1783, that he had in the interval obtained an exclusive right. The partition could not operate on the *Indian* title, and therefore, as the sixth allotment could not be the subject of partition, *Klock* was not bound by it.

IN ERROR.
·······
ALBANY,
January, 1819.
⌣⌣⌣⌣⌣
JACKSON
- v.
RIGHTMYRE.

The prior possession of the lessors is the best evidence of title between the parties to this suit, unless it be repelled by the recovery in ejectment against the lessors. But that recovery arose through the neglect of their attorney : and it is insisted, that possession under a judgment by default can give no title, and does not affect the right. The defendant, standing as he does, in the light of a mere intruder, cannot protect himself under a title in a third person ; besides, there is no subsisting title of which he can take advantage, if it were competent for him to make the defence. (*Jackson,* ex dem. *Duncan and others*, v. *Harder*, 4 *Johns. Rep.* 202. 211.)

THE CHANCELLOR. The lessors of the plaintiff are the heirs at law of *George Klock.* In the year 1764, he was seised in fee of three undivided sixteenth parts of the *Van Horne* patent, which covers the premises ; and in the year 1783, he demised parts of the 6th allotment of the patent, to different persons, for a term of years, reserving rent, and which leases, or some of them, also covered the premises. There is no colour of title shown on the part of the plaintiff, but what is founded upon that seisin, or upon that possession of the ancestor.

I shall examine the claim as founded upon each of those pretensions.

1. The seisin of *Klock*, the ancestor, is found to have been at the time of the partition in 1764, and to have been of an undivided part of the patent, as a tenant in common. A partition was then duly made of the patent, under an act of the colonial legislature, and lot No. 1. of the 6th allotment, was drawn to the share of *Klock & Fonda.* The verdict says, that the patent was " duly divided" by Commissioners appointed under the colony act ; and the act declared, that the partitions under it should be as valid and effectual, as if made on writ according to the course of the common law. *Klock & Fonda*, by means of the partition, became seised in severalty, of lot No. 1. in the 6th allotment, instead of being seised, as before, of an undivided right in the whole patent. And in pursuance of this partition, and separate seisin, it is found that *Klock & Fonda*, in 1767, sub-

divided lot No. 1. according to their respective interests therein, and that the lot No. 1. has since been held in severalty by *Klock & Fonda*, and their assigns, pursuant to such subdivision.

IN ERROR.
.......
ALBANY,
January, 1819.

JACKSON
v.
RIGHTMYRE.

The present ejectment is for lot No. 4. in the 6th allotment, which, on the partition, was drawn to different persons, and it is evident, therefore, that the plaintiffs, as heirs of *George Klock*, can lay no claim to it under the seisin and the partition of 1764.

But it is said, that the partition as to the 6th allotment was null and void, because the other proprietor (*Klock & Fonda* excepted) had, in the year preceding, released all the lands included in the 6th allotment to three *Indians* in fee, in trust for all the *Indians* of the *Canajoharie* castle, and that, therefore, they had no right or interest in that 6th allotment.

One answer to this objection is, that though it be found that those proprietors made that release in 1763, yet it is further found, that in 1764, when the partition was made, they were all seised of undivided parts of the patent, and the parts of which they are so found to have been seised, when united with the parts of *Klock & Fonda*, included the whole patent. The intendment necessarily is, that the seisin in 1764 was a legal seisin, though it is not explained in what manner the proprietors became reseised subsequent to the release to the *Indians* in 1763. The jury have found the fact of a seisin in 1764, and that is sufficient for the purpose. The mode by which that rescisin was lawfully effected, must be left to intendment, and we are at liberty to adopt any intendment that the fact may require.

Another answer to the objection is, that *George Klock* was apprised of the release, for his name was in it, as one of the grantors, but he refused to execute it. And yet with this knowledge of the previous release of the lands included in the 6th allotment, he becomes a party to the partition with those other proprietors, and he recognizes the validity of the partition, even in respect to the lands in the 6th allotment. He carries the partition into effect on his part, and accepts of lot No. 1. which he and *Fonda* drew in the 6th allotment; and in 1767, he and *Fonda* subdivide that lot

IN ERROR.
......
ALBANY,
January, 1819.

JACKSON
v.
RIGHTMYRE.

according to their respective interests, and it has been since held by *Klock & Fonda*, and their assigns, pursuant to such subdivision.   After this, it cannot be permitted to the representatives of *Klock* to disturb the partition, or to question its validity.   They are bound by the act of their ancestor, who, with full knowledge of the release to the *Indians*, solemnly ratified the partition, and carried it into execution, by taking to himself his allotted portion of the patent, and which has been enjoyed by him, and by those holding under him, unmolested, down to this day.

The claim, therefore, of the lessors of the plaintiff to any part of lot No. 4. under the seisin of their ancestor in 1764, totally fails.

2. The remaining ground of right, set up on the part of the plaintiffs, is the possession of *George Klock* in 1783, and which possession consisted in his executing leases for the term of three years, with the reservation of rent, to divers persons, for divers parcels of land in 6th allotment.   The verdict states, that those lessees were severally in possession of lands within lots No. 2, 3, and 4. of the 6th allotment, about the time the leases were dated, and that these leases, or some of them, included the premises, and that the lands were held and occupied by the lessees *under the leases*, until they were dispossessed in 1790, by execution in ejectment.   The actions of ejectment were brought in 1789, against the possessors of these lots, and the heirs of *George Klock*, (who had died in 1787,) had notice of the suits, and employed an attorney to appear for them, and defend the actions.   This he neglected, or omitted to do, and, consequently, judgments were obtained against the possesors by default, and they were dispossessed ; and the lessors of the plaintiff, in those ejectment suits, and their assigns, (of whom the defendant in this suit is one,) have had actual possession of the three lots ever since.

It thus appears, that *George Klock* had possession of the premises, by his lessees, from 1783 to 1787, when he died, and that the lessors of the plaintiff, who are his heirs at law, continued, in that manner, in possession until 1790, and that the possession was lost by means of executions founed on judgments by default in ejectment.   The plaintiffs and their

IN ERROR.
.......
ALBANY,
January, 1819.

JACKSON
v.
RIGHTMYRE.

ancestor have a prior possession of seven years, from 1783 to 1790, to set up against the subsequent possession of the defendant, or those under whom he holds, of eighteen years, from 1790 to 1808, when the present suit was commenced. Here is no possession on either side which has been long enough to have ripened into a right of possession, or sufficient to toll the right of entry. The short and simple question then is, can the lessors of the plaintiff, by reason of their prior possession of seven years, recover against the defendant, who has nothing to set up but a subsequent possession of eighteen years, acquired by process of law under a judgment by default in ejectment?

It was held in *Smith* v. *Lorillard*, (10 *Johns. Rep.* 338.) that a prior possession under a claim of right, and not voluntarily abandoned, would prevail over a subsequent possession of less than twenty years. But the rule was laid down with the qualification, that no other evidence of title appeared on either side, and that the subsequent possession of the defendant was acquired by *mere entry without any lawful right*. But in the case before us, the possession set up by the defendant was acquired under the authority of a judgment at law, and was consequently a lawful entry. A possession with such a circumstance attached to it, affords a better presumption of right than the preceding possession, which had been overcome and lost by the action at law, and, consequently, the presumption which would naturally attach to the prior possession is here shifted from the prior to the subsequent possession. We are not now to inquire how the judgment at law happened to be obtained. The intendment is, that it was regularly and lawfully obtained, either from the want of title or want of attention in the opposite party, and if he had any equitable grounds for relief against the judgment, the Supreme Court would have afforded him that relief, if he had applied in due season. But it seems the judgment in the ejectment suit was acquiesced in for eighteen years, and it is perfectly right and reasonable, that the party who now seeks to regain his possession, should be put to show something more than a mere naked possession existing prior to such judgment. The presumption founded on that possession perished with the

IN ERROR.
.......
ALBANY,
January, 1819.

JACKSON
v.
RIGHTMYRE.

loss of that possession by the judgment and execution at law.

We have frequently been reminded of the language of Lord *Mansfield* in *Atkyns* v. *Horde*, (1 *Burr.* p. 114.) that " a judgment in ejectment was a recovery of the *possession*, (not of the seisin or freehold,) without prejudice to the *right*, as it might afterwards appear, even between the same parties." I understand from the observation, that a judgment in ejectment does not conclude the losing party, and cannot be pleaded in bar of a fresh action between the same persons. It is certainly now understood to be an action for the trial of title, and it is universally used for that purpose. But to assert that a recovery in ejectment was of no manner of efficacy, except to change possession for a moment, and that the losing party might instantly turn round and attack the victor by the mere force and presumption of the prior possession, is to pervert the observation of Lord *Mansfield*, and to render the action of ejectment perfectly absurd. The judgment in ejectment necessarily implies an existing possession in the defendant. The action cannot be brought against any other person than the tenant in possession, and there never could be a recovery that did not absolutely and irresistibly admit, that the lessor of the plaintiff had a better right than the tenant to that existing possession.

A recovery in ejectment does not injure the *right* of the parties, as it may be made to appear afterwards; but it certainly does change the presumption of right founded on the mere prior possession, short of twenty years. In *Fenwick* v. *Grovener*, (1 *Salk.* 258.) it was held by Lord Ch. Justice *Holt*, that no new ejectment could be brought by a defendant after a recovery against him, until he had quitted the possession, or the tenant had attorned to the plaintiff, for otherwise the judgment in the second ejectment might render the judgment in the first suit ineffectual. If there be any sense in this opinion of Lord *Holt*, it must be in allowing to a recovery in ejectment the force of shifting the presumption of right arising from the mere fact of possession. There is no case that will not allow so much effect to the recovery. In *Jackson* v. *Dieffendorf*, (3 *Johns. Rep.* 269.) a judgment by default in ejectment was not allowed to be a

bar to a new ejectment and recovery by the tenant. But
what did the tenant show in that case? A previous posses-
sion of 38 years under a claim of right, and that was show-
ing an absolute right of possession sufficient to toll an entry.

I am, accordingly, of opinion, that the lessors of the plain-
tiff did not prove enough in this case, by showing only a pos-
session of seven years immediately antecedent to the reco-
very on the part of the defendant; and, consequently, their
claim, on this ground also, fails. And this being the only
pretence of right that was exhibited, I am of opinion, that
the judgment of the Supreme Court ought to be affirmed.

This being the unanimous opinion of the Court, it was,
thereupon, *ordered* and *adjudged*, that the judgment of the
Supreme Court be affirmed, and that the defendant in error
recover, against the plaintiff in error, his costs in defending
the writ of error, to be taxed, &c. and that the record be
remitted, &c.

Judgment of affirmance.