## ALFRED BOREL *v.* WILLIAM ROLLINS, MARTIN CONRAY, AND HANNAH CONRAY, HIS WIFE.

POWER OF ATTORNEY—RIGHT TO MAKE PARTITION UNDER.—A power of attorney which authorizes the attorney to sell the lands of the constituent, and to do whatever is necessary to carry the power into execution, does not authorize the attorney to make partition of lands in which the constituent has an interest as tenant in common.

AFFIRMANCE OF UNAUTHORIZED ACT OF ATTORNEY IN FACT.—If an attorney in fact, whose power does not authorize him to make partition of the lands of his principal, makes such partition, the principal may afterwards give effect and confirmation to the partition by the execution of deeds of conveyance, which necessarily recognize the partition as of legal validity.

RATIFICATION BY ACTS CONSTITUTING ESTOPPEL *in pais.*—The principle that an unauthorized act of an attorney in fact, acting under a power required to be under seal, must be confirmed by an instrument under seal, does not prevent the principal from ratifying by an act which operates as an estoppel *in pais*.

EVIDENCE OF TITLE TO LAND BY POSSESSION.—Placing a fence, consisting of small posts with two rails nailed on, around a piece of land, without actually occupying the land or any part of it, and suffering the fence to go to decay in a year or two, so that it will not keep out cattle, is not sufficient to constitute *prima facie* evidence of title to land by actual possession at common law, or under the provisions of the Statute of Limitations, or the Van Ness Ordinance, as against one who enters into the actual occupation and possession of a portion of the land after the fence has broken down.

WHAT IS ADVERSE POSSESSION OF LAND.—The pretended possession of land by an inclosure which is not substantial, without actual occupancy of any portion of it, does not constitute an adverse possession in the common law sense of the term.

PROOF OF TITLE BY PRIOR POSSESSION. — If one who has not been in the actual possession of land claims title on the ground of prior possession, he must not only

show the conveyances of his grantors, but must show that they were in the actual occupation and possession of the land.

TITLE TO LAND UNDER THE VAN'NESS ORDINANCE.—One claiming title to land in San Francisco under the Van Ness Ordinance, must show that either he or his grantors were in the actual possession of the land on the 1st of January, 1855, and thence next ensuing to the 20th of June, 1855.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*Brooks & Whitney*, for Plaintiff and Appellant, argued that the plaintiff had acquired title under the partition, even if the deed of the attorney in fact conveyed no title, because a parol partition was good if followed by possession taken according to it; and cited *Mount* v. *Morton*, 20 Barb. S. C. 127 ; *Jackson* v. *Harder*, 4 Johns. 212 ; *Jackson* v. *Livingston*, 7 Wend. 136 ; and *Baker* v. *Lorillard*, 4 Comst. 257. They also argued that by executing a deed after the partition, in which the partition was recognized, that Tracy and Rollins, who claimed under him, were estopped from denying the validity of the partition ; and cited *Tartar* v. *Hall*, 3 Cal. 263 ; *Redman* v. *Bellamy*, 4 Cal. 247 ; *Ryers* v. *Wheeler*, 25 Wend. 436 ; *Jackson* v. *Hausbronk*, 3 Johns. 331 ; *Mount* v. *Morton*, 20 Barb. 129 ; and *Jackson* v. *Rightmeyer*, 16 J. R. 324. They also argued that a subsequent ratification was equal to a previous authority ; and cited *Fisher* v. *Willard*, 13 Mass. 381 ; *Baker* v. *Burn*, 2 S. & M. 193. They also argued that the power was sufficient to authorize the attorney in fact to make the partition, as the greater contained the less, and one who was authorized to make a sale might exercise the inferior power of dividing the possession ; and that the power also conferred a special authority, which would give the authority to partition ; and cited *LeRoy* v. *Beard*, 8 How. U. S. 468 ; 10 Wend. 218 ; Storey on Agency, 58 ; 5 Equity Ca. 65 ; 6 Cowen, 359 ; 6 Hill, 338 ; 2 Pick. 345 ; and *Vaunder* v. *Hopkins*, 1 J. J. Marsh, 287.

52

*Sloan & Provines*, for Defendants and Respondents, admitted that a parol partition among tenants in common who held by distinct titles, if followed by actual occupation, was good, but argued that a parol agreement to make partition in a given manner was of no validity, and that Lamson, Moon, Brown, Pratt, and Tracy had never been in the actual possession of the land, either in common or in severalty, and therefore a parol partition was impossible.

They also contended that the power of attorney contained no authority to sell, and that the authorities all held, even those cited by plaintiff, that a power to sell and convey did not authorize a partition ; and cited *Attorney-General* v. *Hamilton*, 1 Madd. Ch. R. 126 ; *Taylor* v. *Galloway*, 1 Ham. 232. They also contended that while they admitted that a voidable transaction might be ratified, that yet in this case there was no sufficient evidence of ratification, as between tenants in common whose possession was the subject of partition, there could be no partition which was not binding upon all. They also argued that plaintiff had wholly failed to establish any title in himself or his vendors, as he had not shown actual possession in himself or his vendors ; and cited *Hart* v. *Burnett*, 15 Cal. 613, 614 ; *Wolf* v. *Baldwin*, 19 Cal. 315 ; and *The City of San Francisco* v. *Beideman*, 17 Cal. 463.

By the Court, CURREY, C. J.:

This is an action of ejectment for a lot of land situated at the corner of Mission and Ninth streets, in the City of San Francisco, in the block lying between Mission and Howard streets and Ninth and Tenth streets, which was known in former years as Lot Number Three, of the Mission Addition. The action was commenced on the 28th of July, 1864. The defendants' answer was a traverse of all the material allegations of the complaint, in addition to which it is averred that the defendant Rollins was at the time of answering the owner in fee simple of the demanded premises (excepting a small portion thereof to which he made no claim,) and had been

seized thereof for more than five years next before the commencement of the action, holding the same adversely to the plaintiff and all others; and for further answer the defendant pleaded the Statute of Limitations. The cause was tried before the Court without a jury. The Court found in respect to the premises actually in controversy that plaintiff was owner in fee of one undivided third of the same, and that he was ousted therefrom by the defendants as alleged in the complaint. And the Court further found that the defendant Rollins was the owner and entitled to the posssesion of two ninths of the premises, and that the other defendants were in possession as tenants of Rollins. Judgment was thereupon rendered and entered for the plaintiff for the undivided one third of the premises in controversy.

Both parties were dissatisfied with the finding and judgment, and each moved for a new trial, on grounds distinctly assigned, and which will be noticed as occasion may require. The respective motions for new trial were overruled, and the parties respectively appealed from the order and judgment.

To maintain the issue on his part the plaintiff offered and gave in evidence a deed executed by George C. Sindle, bearing date November 16th, 1853, and recorded the day following, which purported to convey to Joseph Lamson an undivided one third of said Block Number Three. Also, a quitclaim deed, executed by said Sindle on the same day and recorded on the day following to George C. Moon, for an undivided third of said block, and a like quitclaim deed executed by said Sindle to Brown, Pratt and Tracy for the remaining undivided one third of said block. The plaintiff also gave in evidence a power of attorney executed under seal by F. P. Tracy, one of the grantees named in the last mentioned deed to James Pratt, another of such grantees, bearing date the 24th of January, 1854, in which he authorized and empowered Pratt that "in case it shall in the judgment of the said James Pratt and Harvey S. Brown, my partners, be necessary and right for my interest to sell any portion or all the real estate I own in California, then the said James Pratt is authorized to sell the same

and to convey the same by suitable and sufficient conveyances, and to sign and seal the same; and also the said Pratt is authorized to make leases in my name, whether under seal or otherwise, of all or any part of my real estate in the State of California, for such period and upon such terms as he may think proper, and to pay all debts by me contracted in California, and to take acquittances for the same, in my name. * * And generally to say, do, act, transact, determine, accomplish and finish all matters and things whatsoever relating to the premises as fully, amply and effectually to all intents and purposes as I might or could do if personally present, although the matters should require more special authority than is herein comprised, hereby ratifying, confirming and holding valid all that my said attorney or his substitute or substitutes shall lawfully do or cause to be done by virtue of these presents."

In the next place, the plaintiff gave in evidence a deed in partition between Lamson, Moon and Brown, Pratt and Tracy, dated March 18th, 1854, which was recorded on the 20th of the same month. Tracy did not execute this deed in person. Pratt executed it for him and in his name, as his attorney in fact. In the deed of partition the premises in controversy were allotted to Lamson. The plaintiff also offered in evidence a deed executed by Tracy to Pratt bearing date the 13th of January, 1855, by which the former conveyed to the latter all his interest in said Block Number Three. The plaintiff also offered in evidence a deed executed by Pratt to Tracy, bearing date April 14th, 1859, by which he reconveyed to Tracy the equal undivided third part of the southwesterly third of said block. The same deed described lands in the Potrero Nuevo, and then concluded as follows: "The true intent of this deed is to reconvey to the said party of the second part all the land conveyed by him to the party of the first part by his deed dated January 30th, 1855." These deeds were duly recorded soon after their respective dates. To the admissibility of these deeds in evidence the defendant objected; upon which the plaintiff announced to the Court that he offered them as deeds of ratification of the partition,

and proposed to prove further that each party acted on and recognized the partition by making conveyances in severalty of the particular parcel of the block set off to him by the deed of partition. The Court sustained the objection and the plaintiff excepted. The defendants then moved the Court to reject the power of attorney and the partition deed. The motion was sustained with the announcement that the plaintiff was at liberty to offer other proof to show a ratification by Tracy of Pratt's acts, and the plaintiff excepted.

The plaintiff also gave in evidence divers deeds of conveyance by which it appeared that the plaintiff had acquired before this action was commenced all the right, title and interest which Lamson had in the premises in controversy after the execution of the partition deed.

The power of attorney from Tracy to Pratt did not in our judgment authorize the attorney to make partition of lands in which Tracy had an interest as tenant in common. He was authorized under certain circumstances to sell any portion or all the lands of the constituent, and the same to convey, and generally to do whatever in the premises was necessary to carry the power granted into execution, even though the matters to be done should require more special authority than was comprised by the language employed. But, notwithstanding, the power of attorney when understood according to its language and obvious intent, did not authorize the attorney to join in the partition in the name of his principal, we think there can be no question as to the power of the principal himself to give effect and confirmation to the acts of the attorney by his own acts and conduct of solemn significance, such as the execution of deeds of conveyance, which necessarily recognized the partition as of legal validity. It may be assumed that Pratt exceeded his power when he made partition with the others, claiming to be tenants in common of the block, as the attorney in fact of Tracy, but what he did, though in excess of the power granted, it was proposed to prove his principal ratified and confirmed by acting in reference to and treating the partition as made by authority. In

*Jackson* v. *Rightmeyer*, 13 John. 367, the Court held that an agreement relating to a third person in the name of one of the parties, who it did not appear had any authority to execute it, was ratified by the subsequent acts of the party in whose name it was made. The judgment of the Supreme Court in this case was affirmed by the Court of Errors, in which Chancellor Kent delivered the opinion of the Court. (16 John. 323–325 ; see, also, *Baker* v. *Lorillard*, 4 Coms. 257.) It may be said that where the adoption of a particular form or mode is necessary to confer the authority in the first instance there can be no valid ratification except in the same manner ; and therefore that, as the authority to execute deeds upon partition must be under seal, there can be no parol ratification of a deed without authority under seal. This is certainly the doctrine of the law. But it is also a doctrine of the law that an act which operates as an estoppel *in pais*, such as accepting the benefit of the partition attempted to be made, and dealing with the property allotted to the principal by the partition as his own by disposing of it by deeds, confirms the partition made by the attorney without legal authority. (1 Am. Lead. Cases, 574.)

Upon the hypothesis that Lamson, Moon and Brown, Pratt and Tracy were tenants in common of Block Three at the date of the partition deed, we are of opinion the evidence offered by the plaintiff, and which the Court excluded, was admissible.

The plaintiff claimed the right to the possession of the demanded premises as the successor in interest of Lamson, Moon and Brown, Pratt and Tracy, who, he claimed, were in possession of said block as the grantees of Sindle under deeds bearing date in November, 1853. To establish that Sindle was in the possession of the block in 1853, Andrew Thompson was called as a witness, who testified that in that year Sindle and one Nichols put a brush fence around said block. Evidence was offered of a judgment rendered in March, 1854, in favor of Sindle as plaintiff against Peter McKenna and Daniel O'Connor, as defendants, for the recovery of the possession of

said block. There was some evidence tending to show that an execution was issued on this judgment. George C. Moon testified that he and Sindle went upon the premises with the Sheriff when the writ was executed, and that the Sheriff executed it by informing McKenna that he wanted to give possession of the property to Sindle or to the witness, and that thereupon the witness and McKenna executed a lease by which the latter became his tenant of the block. The judgment roll in the case was not produced, for the reason that it was lost, and the lease mentioned was not produced in evidence as it had been destroyed by the witness in 1859. It does not seem to have ever been recorded, and no effort was made to prove its contents. The defendant's counsel objected to the testimony of the witness respecting the lease because he had destroyed the written evidence of it, but the objection was overruled and the defendant's counsel excepted. The evidence of Sindle's possession was extremely meagre and we are not satisfied the testimony of the witness respecting the lease was sufficient to prove that the relation of landlord and tenant subsisted between Moon and McKenna. The evidence offered respecting the lease should have been excluded, as no effort was made to prove the contents of the destroyed instrument.

Lamson testified that he and Moon and Brown, Pratt and Tracy went into the possession of said block in 1854, and put a fence around it, consisting of posts, to which were fastened two rails on which to place pickets, but that no pickets were placed on the rails. He further testified that the fence was not sufficient to keep out small cattle, but that they considered it sufficient to possess the land; that the fence was broken down in different places in the fall of 1854, and he (the witness) put it up, soon after which he went to sea, at which time the fence was down in several places, and that he could not say it was ever repaired so as to keep up a continuous fence around the block. One F. D. Cottle testified that in March, 1854, there was a fence of the character described by Lamson around the block, and that it was up entirely around the block

for several years. There is no evidence in the case showing that either Sindle, Lamson, Moon, Brown, Pratt or Tracy ever resided on any portion of the premises, or ever made use of them for any purpose, and the evidence as to all of them except Sindle tends strongly to show that they never resided there, and as to Sindle it does not affirmatively appear that he ever occupied the block or any part of it. Cottle describes the fence which he saw around the block as composed of posts three by four, or two by four inches square, and he says the rails were considerably smaller.

In 1854 McKenna lived upon and was in possession of a portion of the premises in controversy. The portion occupied by McKenna was twenty-five feet front, on Mission street, running back to a depth of one hundred and thirty-seven and one half feet, and was inclosed by a substantial fence, and had a dwelling house upon it. In February, 1855, McKenna sold and conveyed the lot on which he resided to William Wainwright, who afterward held it in possession by a tenant and in 1861 conveyed the same, by deed, to the defendant Rollins, who thereupon entered into the possession, and afterward, in the same year, removed the fence surrounding the McKenna lot and inclosed the whole premises in controversy, and removed the house to the portion thereof adjoining the angle formed by the intersection of Mission and Ninth streets.

Wainwright and another witness called by the defendants gave evidence tending to show that the fence inclosing the demanded premises was in 1854 and 1855 much broken, and insufficient to protect the property from the ingress of cattle. Wainwright said portions of the fence might have stood up in 1855, but he thought it was pretty well demolished in 1854. That in those years no one except McKenna occupied the lot until the tenant of the witness occupied it.

It was stipulated between the parties at the trial that the land is within the line of the Van Ness Ordinance in the City of San Francisco, and that the claim of said city for said lands had been confirmed in the Circuit Court of the United States, but when confirmed it does not appear.

The defendants contended on the motion for a new trial that the evidence was insufficient to justify the decision of the Court, because,

First—It does not show or tend to show that plaintiff or any one under whom he claimed was seized or possessed of the demanded premises, or any part thereof, at the time the defendants entered and became possessed thereof, or at any time since.

Second—It does not show or tend to show that the plaintiff, his ancestor, predecessor or grantor, was seized or possessed of said premises, or any part thereof, at any time within five years next before the commencement of the action.

The evidence in support of the plaintiff's alleged right seems to us to fall short of that which is necessary and sufficient to constitute *prima facie* evidence of title to land by actual possession at common law, or under the provisions of the Statute of Limitations or the Van Ness Ordinance. The inclosure relied on was not at any time a substantial inclosure, so that thereby the plaintiff or his grantors could maintain that his or their possession was adverse in the common law sense of the term. If the plaintiff relied upon the deeds of conveyance from Sindle to Lamson, Moon, Brown, Pratt and Tracy, and the deeds of conveyance from them down to himself, then he must be held to have failed to show that they or any one of them, or he himself, ever entered into the possession or occupation of any portion of the block under claim of title. If he relied on the Van Ness Ordinance, then it does not appear that the grantees of Sindle, or tenants of such grantees, were in the actual possession of the property as required by that ordinance on the 1st of January, 1855, and thence next ensuing to the time of its passage on the 20th of June of the same year.

As the parties respectively desire a new trial, and as we are satisfied another trial will be necessary to determine the matters in controversy, we order and direct that the order denying the new trial and the judgment be reversed, and that the cause be

remanded to the Court below to be tried *de novo.* The costs
of the appeals in the case must abide the event of the action.

Mr. Justice SHAFTER expressed no opinion.


By the Court, CURREY, C. J., on petition for rehearing:

Evidence of the execution of a lease was offered at the trial
by the plaintiff. The lease itself was not produced, it appear-
ing that it had been destroyed by the lessee. The evidence
was objected to on the ground that the lease had been
destroyed by the party whose interest it was to preserve it,
but the objection was overruled. In our opinion in this case,
we said we were not·satisfied that the testimony of the wit-
ness respecting the lease was sufficient to prove the relation
of landlord and tenant between the persons alleged to be the
lessor and lessee, and we further said the evidence respecting
the lease should have been excluded, as no effort was made to
prove the contents of the destroyed instrument.

We are now asked to grant a rehearing because of the
expression that the evidence "should have been excluded, as
no effort was made to prove the contents of the lost instru-
ment, inasmuch as the objection of the defendant's counsel
was not on that ground." It will be observed that before
using the language above quoted we said we were not satis-
fied the testimony of the witness respecting the lease was
sufficient to prove the relation of landlord and tenant, etc.
This goes to the extent of holding that the evidence respect-
ing the lease was insufficient to establish the relation of land-
lord and tenant between Moon and McKenna. This evidence
seems to have been materially important for the plaintiff.
Without it, it may be, the plaintiff would not have recovered
anything. The defendants made the point on the motion for
a new trial that the evidence did not show or tend to show
any right in the plaintiff to recover any portion of the prem-
ises. The testimony respecting the lease being received, and
being, as it stood, insufficient, its effect was objected to on

the motion of the defendants for a new trial. A new trial should have been granted, we think, on the ground that the evidence did not justify the finding and judgment so far as it was in plaintiff's favor. Both parties moved for a new trial and we are of the opinion the motions should have been granted.

The petitioner's counsel has discussed at length under what circumstances secondary evidence may be admitted to prove the contents of lost or destroyed instruments. The case, as it is before us, requires no expression of an opinion on the subject. We have endeavored to settle all the questions necessary to be decided upon the record of the case in this Court. When the cause is again tried each party will be permitted to produce such evidence as he may be able, material to the issue on his part, unembarrassed, we apprehend, by anything contained in the opinion of the Court heretofore delivered.

Rehearing denied.