## DANIEL TROY v. JEREMIAH CLARKE et als.

DEFECTS IN FINDINGS OF FACTS.—Defects in the findings of facts cannot be relied on as a ground for a reversal of the judgment unless the findings were excepted to on that ground.

ENFORCEMENT OF CONTRACT TO SELL LAND.—If, in a contract for the sale of land, the vendee agrees to make certain payments at stipulated times, and the vendor agrees to execute a conveyance of the land when the payments are all made, the vendee cannot maintain an action in equity for a specific performance if he has failed without any cause to make the first payment, and the last instalment is not due.

RIGHT OF POSSESSION TO LAND.—If, after the plaintiff in an action has recovered judgment against the defendant for the possession of land, the plaintiff, without enforcing the judgment, contracts to sell the land to the defendant, without making any agreement concerning the judgment for possession, the right of possession is not in the vendee, and the vendor can remove him at any time by an execution.

BILL FOR SPECIFIC PERFORMANCE AND FOR DAMAGES.—*Query?* Can one who files a bill in equity for a specific performance of a contract to convey land, and also to recover damages for personal property converted to his use by the vendor, who has taken possession after the execution of the contract, recover judgment for the

damages if he fails in obtaining a specific performance, or are the damages cognizable in a Court of law only?

FINDINGS OF FACT.—A finding that hay, alleged to have been converted by defendant to his own use, was worth twenty dollars per ton, without also finding the number of tons converted, does not entitle the plaintiff to a judgment.

APPEAL from the District Court, Third Judicial District, Santa Clara County.

On the 17th of January, 1863, the defendant Clarke recovered judgment against the plaintiff for the possession of one undivided half of the land in controversy, and for the sum of thirteen hundred and seventy-five dollars damages, rents, and profits thereof. Afterwards, and before the judgment had been enforced, Clarke and the plaintiff entered into the following agreement:

"This indenture, made June 8th, 1863, between Jeremiah Clarke, of San Francisco, and Daniel Troy, of Santa Clara County, witnesseth, that it is hereby agreed that the said Clarke shall sell and convey to the said Troy the undivided half of the piece or parcel of land on which said Troy resides, (being a part of the tract called 'Rincon de Francisquito,') bounded as follows, viz:

"Commencing at the point where fence of George Charleston joins the shore of the bay; thence southerly along said fence to the southwest corner of said Charleston's land; thence in a straight line southwesterly to the corner of R. de Zaldo's fence; thence along said fence to the west corner thereof; thence in a straight line to the piece of land in possession of William Huber; thence along said piece of land to the land in possession of Henry Seale; thence along the fence dividing the lands in possession of said Seale from that in possession of said Troy to the Bay of San Francisco; thence along the shore of said bay to the place of beginning; containing four hundred and fifty acres of land, at the purchase price of fifteen dollars per acre for said half interest, payable in gold coin of the United States heretofore coined, or in other gold coin of equal value, as follows, viz: at least five hundred ($500) dollars

on or before the first day of September next, and the balance in five equal annual instalments, payable respectively on the first day of September of each year thereafter, the whole to bear interest from the date hereof at the rate of ten per cent per year, and payable yearly.

"It is further agreed that the said Troy shall make said payments to said Clarke at and in the manner aforesaid; that the said Troy will pay all the taxes that may be assessed or be a charge upon said tract.

"And it is further agreed that so soon as it shall be finally decided by a Court of competent jurisdiction that the said Clarke is, or shall have become the owner of the other undivided half part of said premises, the said Clarke will sell the same to said Troy for ten dollars per acre, payable in said gold coin, in four equal annual instalments, payable respectively in one, two, three, and four years after such final decision shall be made, with interest from the time of such decision at ten per cent per year.

"And it is further agreed, that in making the said conveyances, the northwest boundary of the tract to be conveyed to said Troy, instead of following the present fence dividing the premises of said Troy from those of said Seale, as above described, may be run at right angles to the bay; provided, that the quantity of land conveyed shall be the same, viz: four hundred and fifty acres.

"And it is further agreed, that if the claim of William Huber shall be finally decided by the Supreme Court in the suit now pending between said Clarke and said Huber, to be valid and embrace any portion of the above described tract, then such portion shall be held and deemed as not embraced or included in this agreement, and that if said suit shall be appealed to said Supreme Court, and not finally decided on or before the first of September, 1864, that then the interest on the purchase price of one hundred and fifty acres, that is, the interest on two thousand two hundred and fifty dollars, shall not be due and shall only commence to run from the date of such decision.

" In witness whereof, the parties have hereunto set their hands and seals the day and year first above written."

At the time of the execution of the agreement, and in consideration thereof, the defendant Clarke made a written agreement that the judgment should not be enforced against the plaintiff for the damages. At the time the agreement was made, and afterwards, it was mutually understood between the parties that if the plaintiff was not able to pay the first instalment when it became due, he should have an extension of time for another year, by paying one hundred and twenty dollars when the first instalment fell due. The plaintiff did not pay the first instalment, nor the one hundred and twenty dollars, but remained in possession of the land, cutting the hay growing upon the land, and leasing portions of it. On the 30th of May, 1864, Clarke served on plaintiff written notice to quit the premises. The defendant Clarke then procured an execution to be issued upon his judgment for possession, and on the 13th of June, 1864, the Sheriff executed it by dispossessing plaintiff and putting defendant Clarke in possession. The other defendants were tenants of Clarke. On the 23d of November, 1865, the plaintiff commenced this action for a specific performance of the contract, and to be restored to the possession of the premises, and for an account to be taken of the value of personal property alleged to have been taken possession of by defendant when he was placed in possession of the land, and for judgment for the value of the same. The defendant recovered judgment, and the plaintiff appealed.

The other facts are stated in the opinion of the Court.

*Wallace, Patterson & Stow,* for Appellants, argued that there were admissions in the pleading which, taken in connection with the facts, entitled them to a specific performance. They also argued that the Court erred in dismissing the bill absolutely, even though no specific performance should have been decreed, as plaintiff was entitled to a judgment restoring him to the possession, and for damages; and as the damages were

consistent with the case made by the complaint and embraced within the issue, and this was the rule in equity, unless the objection was distinctly made by the defendant that the damages were cognizable at law only; and cited Practice Act, Sec. 147; *Marquat* v. *Marquat*, 2 Kernan, 341; *Phillips* v. *Gorham*, 3 Smith, 247; *Le Roy* v. *Platt*, 4 Paige, 77; and *Wiswall* v. *Hall*, 3 Paige, 313.

*Elisha Cook*, for Respondent, argued that plaintiff's right to damages depended on whether he had performed his part of the contract so as to entitle him to a specific performance, and that having failed to perform, the parties were left in the same position with reference to the land and crops that they occupied when the contract was entered into, and that Courts of equity had no jurisdiction of matters properly cognizable in a Court of law except where the principal relief prayed for was on the equity side and the legal matters were incidental, and that in this case the Court of equity having denied the relief in equity, it had no jurisdiction over the question of damages, and cited *McLaughlin* v. *Piatti et als.*, 27 Cal. 451.

By the Court, SHAFTER, J.:

Bill for specific performance. Clarke bound himself by a written agreement, dated June 18th, 1863, to convey to the plaintiff an undivided half of certain lands situate in the County of Santa Clara, for the sum of six thousand seven hundred and fifty dollars—five hundred dollars whereof was to be paid on the 1st day of September, 1863, and the balance in five equal annual instalments, payable respectively on the 1st day of September of each year thereafter, with interest at ten per cent per annum, payable annually. Clarke also agreed to convey the other moiety of the premises to plaintiff so soon as it should be judicially determined that he was the owner thereof, for two thousand two hundred and fifty dollars, in four equal annual instalments, payable respectively, in one, two, three and four years from the date of such decision.

The cause was tried by the Court. Findings and judgment for the defendant. The appeal is from the judgment.

First—We do not consider that there are any admissions in the answer entitling the plaintiff to a reversal of the judgment. No defect in the findings can be relied on as a ground of reversal, for no exception was taken to them under the Act of 1861. On the facts as found and stated affirmatively there can be no question as to the correctness of the judgment. Not only had the plaintiff failed at the commencement of the action to pay the first instalment due on the contract and without justification or excuse, but by the very terms of the contract the defendant was not bound to convey until all the instalments should be paid with accruing interest and taxes and the last instalment would not become due until September, 1868.

Nor on the facts is the plaintiff entitled to be restored to the possession. The right of possession is not in him. He was turned out under an execution issued on the judgment recovered in the action of ejectment brought by Clarke against him prior to the contract to convey, and Clarke was put in possession by the officer; nor is there anything disclosed in this record showing that the relations of the parties to each other and to the lands have been changed since that time in any legal particular.

Second—The plaintiff failing to maintain his claim to specific relief on the findings insists that he is at least entitled to compensation in damages for certain personal property on the premises which the defendant converted to his own use.

It may well be questioned whether damages for the alleged conversion could be awarded in this proceeding, inasmuch as the title of the plaintiff to the principal relief prayed for has failed. (2 Sto. Eq., Chap. 19.) But passing the point as one not necessary to be decided here, it is sufficient to say that on the face of the findings the plaintiff has sustained no appreciable damage. It is found that the hay grown upon the premises in 1864, and alleged to have been converted, was worth twenty dollars per ton, but there is no finding of the

amount so grown. As there was no exception taken to the findings as defective, it must be presumed that there was an entire failure of evidence on the question of the amount of hay converted, or if evidence was given on that point, then that the amount was so inconsiderable as to fall within the rule *de minimis.*

Judgment affirmed.