[No. 19510. In Bank.—June 6, 1896.]

# JAMES A. BLOOD, Respondent, *v.* LA SERENA LAND AND WATER CO., Appellant.

Corporations—Unauthorized Note and Mortgage—Resolution of Stockholders.—Where the only authority upon which the president and secretary of a corporation acted in executing a note and mortgage in its name was a resolution passed at the preliminary meeting of stockholders before organization of the board of directors, such authorization is insufficient to support a finding of due and regular execution of the note and mortgage.

Id.—Adoption of Corporate Seal by Use—Prima Facie Proof of Authority—Counter-proof.—Where it is shown that the seal attached to a note and mortgage executed by the president and secretary of a corporation in its name, though not regularly adopted, was employed as the seal of the corporation in all transactions requiring the impress of a seal, a finding is warranted that it became the seal of the corporation by use; and the affixing of such seal to the note and mortgage makes a *prima facie* showing of authority to execute them; but such *prima facie* proof is overcome by proof that no resolution authorizing such execution was ever adopted by the board of directors of the corporation.

Id.—Mode of Ratification.—Under the Civil Code a ratification can only be made in the manner required in order to confer original authority for the act ratified; and a note and mortgage which could only be authorized by resolution of the board of directors can only be ratified by such resolution.

Id.—Estoppel in Pais Distinguished from Ratification.—An estoppel *in pais* addresses itself to equity, and is to be distinguished from ratification, which is a question of legal cognizance; and it is only where the acts fall short of a legal ratification that the necessity exists of invoking the doctrine of estoppel.

Id.—Pleading—Equitable Rebuttal.—An estoppel *in pais* may be shown, without pleading, by way of equitable rebuttal to defendant's proof of want of authority to execute the note and mortgage sued upon, after plaintiff has established a *prima facie* case, by proof that they bear the corporate seal; and it is only when a plaintiff must rely upon an estoppel *in pais* in order to maintain his action against the defendant at all, that it must be pleaded.

Findings—Power of Appellate Court—New Trial.—The appellate court has no power to make findings from the evidence; but where under the evidence findings not made are necessary to the proper determination of the rights of the parties, it will order a new trial of the case.

Appeal from a judgment of the Superior Court of Santa Barbara County and from an order denying a new trial. W. B. Cope, Judge.

The facts are stated in the opinion of the court.

*Thomas McNulty*, and *Chapman & Hendrick*, for Appellant.

The corporate seal is only *prima facie* evidence that it was affixed by proper authority, and the contrary may be shown. (*Southern Cal. Col. Assn.* v. *Bustamente*, 52 Cal. 192; *Bliss* v. *Kaweah etc. Co.*, 65 Cal. 502; *Vaca Valley etc. R. R.* v. *Mansfield*, 84 Cal. 560.) There was neither any ratification nor any estoppel *in pais*. (*Gribble* v. *Columbia Brewing Co.*, 100 Cal. 67; Civ. Code, secs. 2309, 2310; *Salfield* v. *Sutter County etc. Co.*, 94 Cal. 549; *Farish* v. *Coon*, 40 Cal. 33; *Boggs* v. *Merced Min. Co.*, 14 Cal. 279; *Watson* v. *Sutro*, 86 Cal. 510, 516.) An estoppel *in pais* must be pleaded. (*Etcheborne* v. *Auzerais*, 45 Cal. 121.)

*J. W. Taggart*, and *R. R. Canfield*, for Respondent.

The proof showed a *prima facie* case of authority, and the seal affixed is presumed to be the corporate seal. (*Phillips* v. *Coffee*, 17 Ill. 154; 63 Am. Dec. 357, 360; *Leggett* v. *New Jersey Ry. etc. Co.*, 1 N. J. Eq. 541; 23 Am. Dec. 728, 747; *Susquehanna etc. Co.* v. *General Ins. Co.*, 3 Md. 305; 56 Am. Dec. 740, 741.) The vote of a board of directors was not necessary. (*Johnston* v. *Crawley*, 25 Ga. 316; 71 Am. Dec. 173, 178; *Union Gold Min. Co.* v. *Bank*, 2 Col. 226; Green's Brice's Ultra Vires, 525, 525.) The action of the board in arranging for payment of the mortgage, and making part payment was a ratification. (*Seal* v. *Puget Sound etc. Co.*, 5 Wash. 422; Morawetz on Corporations, sec. 627; *Ralphs* v. *Hensler*, 97 Cal. 296.) The evidence shows an estoppel *in pais*. (*Bank of Yolo* v. *Weaver* (Cal.), 31 Pac. Rep. 160; *Main* v. *Casserly*, 67 Cal. 127, 129; Green's Brice's Ultra Vires, 2d ed., 784.)

HENSHAW, J.—Appeals from the judgment and from the order denying a new trial.

The complaint is a pleading in the usual form to fore-

close a mortgage alleged to have been executed by defend-ant corporation to plaintiff. Defendant answered, deny-ing the execution of the instruments, and likewise filed a cross-complaint, a general demurrer to which was sustained.

Upon the trial the following facts were disclosed: One James A. Blood was the owner of a ranch contain-ing about three hundred and fifty acres. In the year 1887 he authorized his nephew, James A. Blood, Jr., a real estate broker, to make a sale of this ranch at the price of one hundred and five thousand dollars, agree-ing to pay him a commission of five thousand dollars for effecting the sale. Blood, Jr., proceeded as a "pro-moter" to organize a corporation for the purpose of pur-chasing this land, platting, subdividing, and selling it. Under these circumstances the La Serena Land and Water Company was organized as a corporation. After it had filed its articles of incorporation, but before any meeting of its directors was held, the subscribers to the capital stock of the corporation, of whom Blood, Jr., was one, in meeting agreed upon the purchase of the Blood ranch, and to that end authorized the payment by Blood, Jr., to plaintiff of one-half of the purchase price of the ranch. Upon receipt of this sum plaintiff was to exe-cute to the corporation his deed for the land, and in return the corporation was to make and deliver to him its note and mortgage for the remaining one-half of the purchase price.

Thereafter the directors met and organized. They made no formal adoption of a corporate seal, but seem to have instructed their president to procure such a seal. They passed no resolution looking to or touching upon the purchase of the Blood ranch, or the execution of the note and mortgage. Payment to plaintiff of the one-half of the purchase price was, however, made by Blood, Jr., pursuant to the instructions which he had received at the stockholder's meeting, which payment consisted of about forty thousand dollars in gold coin, and stock of the corporation of the estimated value of twelve

thousand five hundred dollars. Upon receipt of this
plaintiff executed to the corporation his deed for the
land, and in return received a note and mortgage for
the sum of fifty-two thousand five hundred dollars.
Both the note and the mortgage were executed in the
name of the corporation by James L. Barker, its presi-
dent, and James A. Blood, Jr., its secretary. Barker
and Blood were in fact, respectively, president and sec-
retary of the corporation. The note and mortgage also
bore impress of what purported to be the common seal
of the corporation. Blood, Jr., as one of the original
subscribers, received some shares of the stock, and other
shares were made over to him by Blood, Sr., represent-
ing the commission of five thousand dollars, which he
was to receive for effecting the sale. It appears that the
stockholders of the corporation knew that the purchase
price of the land was to be one hundred and five
thousand dollars, and were satisfied to make the pur-
.chase for that sum, and upon the indicated terms. It
is not so clear that they knew that their associate, Blood,
Jr., was to have received a commission from Blood, Sr.,
for effecting the sale. Blood, Jr., by his own testimony,
acted for the incorporators in the matter of the pur-
chase. How far he acted for them does not clearly ap-
pear. It also is uncontradicted that he acted for the
vendor, Blood, Sr.

The corporation entered upon and took possession of
the land, exercising general acts of dominion and own-
ership over it. It was surveyed and platted; orchards
were cut down, springs developed, certain portions of it
sold, and deeds for those portions executed by the cor-
poration in its own name, Blood, Sr., joining therein.
Interest was paid upon the mortgage for a time, and by
a later convention between the corporation and the
mortgagee, the produce of the ranch was afterward taken
in lieu of interest.

· Finally, the corporation having failed to meet the
terms of the contract, this action was instituted.

The court found that the note and mortgage were duly

executed by the corporation. It also found that the contract of note and mortgage was duly ratified by the corporation, and decreed foreclosure accordingly. The finding that there was a due execution of the note and mortgage, if understood to mean that there was due authority for their execution at the time they were made, is not supported by the evidence. Plaintiff, by the introduction of the note and mortgage, proof of the corporate seal, and of the names of the officers executing the instruments on behalf of the corporation, established, it is true, a *prima facie* case of due execution. But it was only a *prima facie* showing, and one subject to be overthrown by proof of the fact that original authority was lacking.

Appellant first contends that the evidence of plaintiff failed in showing that the seal employed upon the instruments was in fact the common seal of the corporation. It is true that one offering a paper purporting to be the instrument of a corporation under seal is called upon to make proof that the seal employed is the corporate seal, but the earlier strictness of proof in this regard has been much abated by later decisions, and it is sufficient if plaintiff can show, either that the seal is the regularly adopted common seal of the corporation, or that it is the seal which without such formal adoption is and has been habitually used as such. In the present case it appeared that the seal was not regularly adopted, and also that it was used upon the instruments in question for the first time in the history of the corporation. But it was further shown that it had been afterward employed as the seal of the corporation in all transactions requiring the impress of such a seal, and we are of opinion that there was a sufficient showing to warrant a finding that it had become the common seal of the corporation by use.

Plaintiff thus established his *prima facie* showing of regular and due authorization; but it was a showing which could be overcome, and in this case it was in fact overcome by proof that no resolution authorizing the

making of this contract was ever adopted by the managing board of the corporation, its board of directors. The only authority upon which the president and secretary acted was the resolution passed at the preliminary meeting of stockholders, before organization of the board of directors, and that such authorization was insufficient to support a finding of due and regular execution is a proposition scarcely requiring authority in its support. (*Gashwiler* v. *Willis*, 33 Cal. 12; 91 Am. Dec. 607; *Alta Silver Min. Co.* v. *Alta Placer Min. Co.*, 78 Cal. 629.)

The defect in this instance did not arise from a mere failure to record a resolution duly passed, which was the question considered in *Schallard* v. *Eel River Nav. Co.*, 70 Cal. 144, but in a showing that such a resolution was never in fact adopted.

But was the contract, originally defective and voidable for lack of power and authorization, afterward ratified by the corporation? It is so found by the court. Can the finding be sustained? It is a general principle that a corporation, like an individual, may ratify and validate any unauthorized act, the doing of which it could, in the first instance, have authorized and empowered. What conduct and proceedings will constitute and amount to a ratification is a question which the courts have been called upon to decide with great frequency. In the literature of the law which is thus full upon the subject there has often been little inclination displayed to distinguish between ratification and estoppel *in pais*. The facts are usually set forth at length, and the conclusion is reached and expressed that such conduct amounts to ratification; and indeed, where the form which the ratification must take is not governed by statutory rules, it may and usually does matter little whether the acts of a principal are said to be such as to constitute a ratification, or to be such as to constitute an estoppel. By either name he is held equally bound. But the distinction between the two is nevertheless well defined, and where, as in this state, the mode of ratification is governed by statute it becomes important and necessary

to distinguish them. Acts and conduct amounting to an estoppel *in pais* may, in some instances, amount also to ratification, but, on the other hand, ratification may be complete without any of the elements of an estoppel. The elements of an estoppel *in pais* have for so long been settled in this state that it is superfluous even to refer to the leading cases of *Boggs* v. *Merced Min. Co.*, 14 Cal. 279, and *Martin* v. *Zellerbach*, 38 Cal. 300; 99 Am. Dec. 365.

The requisites and forms of ratification, however, are entirely within the provisions of the code.

"An oral authorization is sufficient for any purpose, except that any authority to enter into a contract required by law to be in writing can only be given by an instrument in writing." (Civ. Code, sec. 2309.)

"A ratification can be made only in the manner that would have been necessary to confer original authority for the act ratified, or, where an oral authorization would suffice, by accepting or retaining the benefit of the act, with notice thereof." (Civ. Code, sec. 2310.)

Ratification is thus a question of legal cognizance, while estoppel *in pais* addresses itself to equity. Ratification under our code is a legal term with a well defined and specific meaning, and to use it interchangeably with estoppel, or with the verbs "to adopt" or "to confirm," must result and has resulted in unfortunate confusion.

One instance out of many may be cited to point what has been said. In the syllabus to *Borel* v. *Rollins*, 30 Cal. 408, is the following: "Ratification by acts constituting estoppel *in pais*.—The principle that an unauthorized act of an attorney in fact, acting under a power required to be under seal, must be confirmed by an instrument under seal, does not prevent the principal from ratifying by an act which operates as an estoppel *in pais*."

Had the words "confirmed" and "ratifying" been transposed in the foregoing, the language would have been accurate and unobjectionable. But, if the act in fact has been ratified, the ratification is sufficient, and

there is no need of invoking the doctrine of estoppel. It is only where the acts fall short of legal ratification that the necessity of calling upon the doctrine of estoppel exists. A reference to the text of the opinion in that case at once discloses this, for it is there found that there was no ratification, but that there was an estoppel, the court saying: "It may be said . . . . that, as the authority to execute deeds upon partition must be under seal, there can be no parol ratification without authority under seal. This is certainly the doctrine of the law, but it is also a doctrine that an act which operates as an estoppel *in pais*, such as accepting the benefit of the partition attempted to be made, and dealing with the property allotted to the principal by the partition as his own, by disposing of it by deeds, confirms the partition made by the attorney without legal authority."

Now, while ratification may be proved under a plea of due execution (*Goetz* v. *Goldbaum*, 37 Pac. Rep. 646), yet the evidence in this case falls short of proving it, and more strongly tends to establish an estoppel.

As in the case of *Borel* v. *Rollins, supra,* it showed a certain confirmation by the corporation of the unauthorized acts of its president and secretary. The land was taken, control exercised over it, portions of it were sold. There was even some recognition of the corporation's indebtedness by a payment of moneys for interest upon the mortgage debt, though it is claimed that this payment was made, not by the corporation, but by certain individual shareholders therein. Many acts of knowledge and adoption might be instanced, but they singly and collectively fall short of the code requirements for ratification. The corporation in the first instance could have authorized the execution of this particular note and mortgage only by a resolution of its board of directors (the equivalent of a writing) duly assembled in meeting, which resolution, either by itself or taken with its by-laws, would have authorized the president and secretary not only to make a mortgage, but would have

set forth the rate of interest and the agreement to pay in gold coin. The authority of the agent to make any mortgage must be in writing. (Civ. Code, sec. 2309.) The agreement to pay the ten per cent must be in writing (Civ. Code, secs. 1917, 1918), and the requirement to pay in gold coin as well. (Civ. Code, sec. 1913.) The contract of mortgage with these terms and conditions could only be ratified in the manner that would have sufficed to confer original authority. Such a ratification plaintiff failed to show (*Salfield* v. *Sutter County etc. Co.*, 94 Cal. 546), and this, aside from the consideration of the knowledge or lack of knowledge of the corporation of the interest and dual relationship of Blood, Jr., from the inception to the consummation of the transaction; for the acts did not constitute a ratification, whether the corporation possessed this knowledge or did not.

As has been intimated, they more strongly tend to establish against the corporation an estoppel *in pais.* Such an estoppel was, however, neither pleaded nor found. We do not mean to be understood to say that under the peculiar facts of this case it was necessary for plaintiff so to have pleaded. Plaintiff went into court in the belief that he held a note and mortgage duly executed to him. He established a *prima facie* case to that effect. In turn he was met by a countershowing of lack of due authorization, and undertook to meet this by evidence of subsequent ratification. The same evidence, however, treated as evidence by way of estoppel, was admissible, without pleading estoppel, to raise an equitable barrier against defendant's proof of want of authority. Had plaintiff, in the first instance, been called upon to rely upon an estoppel *in pais* in order to maintain his action against defendant at all, it would have been necessary, of course, for him so to have pleaded. But such was not his cause of action. He successfully makes out a *prima facie* case, and may, without pleading it, use the evidence in estoppel to prevent the corporation from maintaining what, as

against its acts, would be an unjust and unwarranted defense.

Whether or not the acts of the corporation are sufficient to raise such an estoppel is not now a question for determination. It would involve, not the review of findings made by the trial court upon the question, for the trial court made none, but would necessitate the making in this court, in the first instance, of such findings. This we have neither the right nor the disposition to do.

But as, under the facts here disclosed, such findings are necessary to the proper determination of the rights of the litigants, a new trial must be ordered. Upon such trial it may be determined what position Blood, Jr., occupied in relation to the corporation, whether he was merely a mouthpiece to deliver messages, or whether he was chargeable with the high good faith exacted of all who stand in a relation of trust. It may also be determined whether or not the corporation knew, or was chargeable with knowledge of, the interest of Blood, Jr., and of the fact that he was to receive a commission from the vendor. In short, there may be explicitly set forth the acts and conduct of the corporation which may be claimed to estop it from contesting the validity of the note and mortgage. Thereafter, should an appeal be taken to this court, the question will be properly under review.

So far as this decision goes, it is but a determination that the findings of due execution of the note and mortgage, and of ratification thereof, are not supported by the evidence, and cannot stand.

The judgment and order are reversed and the cause remanded for a new trial.

TEMPLE, J., HARRISON, J., GAROUTTE, J., and VAN FLEET, J., concurred.

McFARLAND, J., dissenting.—I dissent, and adhere to the opinion delivered in Department. (*Blood* v. *La Serena Land etc. Co., infra.*) Section 2310 of the Civil

Code must be construed, and has always been construed by this court, in connection with the principle declared in section 1589, that "a voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting"; and in section 2311, that "ratification of part of an indivisible transaction is a ratification of the whole." Of course, there is a certain distinction between ratification and estoppel *in pais;* that is, the word "estoppel" applies to certain acts and conditions to which the word "ratification" could not be appropriately applied, and *vice versa.* Strictly speaking, estoppel is where a man is bound by his own act, and ratification where he is bound by his acceptance of the act of another. The common example of estoppel, where the owner of property stands by and sees it sold without disclosing his title, could not well be designated as ratification; and so when a man consents to, and indorses, the unauthorized contract of his agent by accepting the benefits of the contract, and acting upon it as if it had been authorized, the proper designation of such conduct is ratification and not estoppel, although the latter term is sometimes applied to it. But, whether it be called estoppel or ratification, it binds the person thus indorsing the agent, whether such person be a natural one or a corporation. This is the well established doctrine. (See *Gribble* v. *Columbus Brewing Co.*, 100 Cal. 67, and cases there cited.) That the evidence in the case at bar showed such consenting and indorsing conduct on the part of the appellant is beyond question; and, in my opinion, the judge of the court below properly found it to be "ratification." If he had called it by the less appropriate name of "estoppel" it would have meant, under the circumstances of this case, exactly the same thing. And if, under the construction given to section 2310, there can be no valid ratification by conduct or acts *in pais* of a contract which should have been originally in writing, then,

surely, such attempted ratification cannot be made good by calling it estoppel.

In my opinion the judgment should be affirmed.

The following is the opinion of Department One, rendered on the 27th of September, 1895, and adhered to in the dissenting opinion of Mr. Justice McFarland.

BRITT, C.—Foreclosure of mortgage. Defendant is a corporation. The complaint, filed May 24, 1892, was in the usual form, alleging with other matters that defendant made its promissory note to plaintiff on August 30, 1887, for the sum of fifty-two thousand five hundred dollars, besides interest, due one year from date, and, at the same time, to secure payment of the note, executed to plaintiff a mortgage of certain lands in Santa Barbara county. The note and mortgage were subscribed with the name of the defendant by its president and secretary, and both bore the impress of a seal purporting to be that of the corporation. The only defense made by the answer was that the defendant never authorized the execution of the note and mortgage. Defendant filed a cross-complaint stating, among other things, that about September 1, 1887, plaintiff conveyed to defendant by deed the premises described in the mortgage, and that, as part of the consideration therefor, said note and mortgage were delivered to plaintiff without the authority or consent of defendant, and that it was not privy to the purchase of the land; that defendant never appropriated to itself the use of the land or the profits thereof; that defendant's board of directors, at a meeting held May 26, 1892, passed a resolution reciting that the purchase of said land—called the "Blood ranch"—and the execution of said note and mortgage were never authorized by the defendant, and directing the president of the company to make in its name and tender to plaintiff a reconveyance of the land, excepting a small parcel previously conveyed by defendant, in conjunction with plaintiff, to one Thompson; that such a deed was so made and tendered to plain-

tiff on May 31, 1892, and by him rejected; upon this cross-complaint defendant prayed that the note and mortgage be declared void. The court sustained a demurrer to the cross-complaint, and the correctness of its action in that regard is not impugned; we state the matters there alleged merely to illustrate the subsequent history of the case.

It is disclosed by the record that the plaintiff was the owner of the land—about three hundred and fifty acres —in the year 1887, and authorized his nephew, also named James A. Blood, a real estate broker, to make sale of the same at the price of one hundred and five thousand dollars, agreeing to pay him a commission of five thousand dollars, contingent upon his effecting a sale. The broker associated several other persons with himself, and they formed, in August, 1887, the defendant corporation for the purpose of buying plaintiff's land; said broker conducted the negotiation with plaintiff on behalf of the promoters of the corporation, and the terms of the purchase were substantially settled before August 29, 1887, at which time officers of the corporation were elected, said broker becoming its secretary and a member of its board of directors. Plaintiff executed a deed of the land to defendant, and, at the same time, received (but from whose hands does not clearly appear) the said note and mortgage as security for the deferred or second payment of one-half the agreed purchase price, the first payment being made partly in cash—about thirty-seven thousand five hundred dollars —paid by the subscribers to defendant's stock, and partly in such stock itself. There was no resolution of defendant's board of directors authorizing the purchase of the land, or the issuance of the note and mortgage, nor was the seal affixed thereto ever adopted as the corporate seal by any direct action of the board for that purpose. Plaintiff's deed to defendant bore the same date as the mortgage—August 30, 1887, but they were not, in fact, exchanged until about September 15th, following.

Shortly afterward the defendant took possession of the land, and its board of directors by resolution authorized the survey and subdivision of the same into lots, blocks, and streets, and fixed prices at which subdivisions might be sold; the board also ordered the letting of parcels of the land for temporary purposes, and in September, 1888, passed a resolution directing the execution of a deed to plaintiff of eight and one-fourth acres thereof at the price of three thousand seven hundred and fifty dollars, and in February, 1890, in the same manner, authorized the conveyance of a parcel—apparently about fifteen acres—to one Thompson; deeds were executed pursuant to such resolutions; in the conveyance to Thompson plaintiff joined; the defendant caused portions of the land to be cultivated and took the proceeds of the crops grown thereon in the year 1888; it also caused to be cut some trees growing on the land, and through its board of directors and officers exercised many other acts of ownership not necessary to be detailed. All the proceeds of said sales of land, as well as the net receipts from sales of crop, were paid over by defendant to plaintiff on the note in suit. In April, 1889, the board of directors passed a resolution reciting that "owing to the great depression in real estate it is impossible to sell our La Serena property [covered by the mortgage], either in whole or part," and requesting plaintiff to accept the proceeds of the ranch in lieu of interest on the company's indebtedness to him, and to assume the management of the ranch; such proposal was acceded to by plaintiff, and was carried into effect.

The trial was had in November, 1892, the evidence closing on the twenty-third day of that month; said real estate broker was a witness, and, incidentally to the main purposes of his examination, gave testimony of his agency to sell the land, and of his interest in effecting the sale. On May 12, 1893, the court announced orally its decision in favor of plaintiff, and on May 25th following, before the findings were signed, defendant applied for leave to amend its answer by adding a de-

fense thereto based on the circumstances of the dual
agency of the broker and his interest in making the
sale, which matters, it was alleged, were unknown to the
subscribers for the company's stock.    It was stated in an
affidavit accompanying the motion for leave to amend that
knowledge of the facts averred in the proposed amend-
ment was first obtained by defendant from said testi-
mony of the broker at the trial.    Such amendment
contained no allegations looking to a rescission of the
contract, nor any reference to the offer to reconvey the
land to plaintiff, as in the cross-complaint to which a
demurrer had been sustained.    The court refused leave
to amend, and judgment passed for plaintiff, with provi-
sion for execution generally in case of deficiency after
sale of the premises.

1. For the purposes of the decision it may be assumed,
in accordance with the contention of appellant, that the
corporation was not originally privy to the purchase of
the land from plaintiff, and that the instruments in suit
purporting to be its obligations were originally executed
without its authority.    But it is manifest—leaving out
of view for the moment the effect of the broker's double
agency—that the corporation adopted as its own the
whole transaction with plaintiff, of which the execution
of the note and mortgage was an inseparable part.    De-
fendant, acting through its board of directors and offi-
cers, and they having full knowledge of the terms of the
mortgage, took possession of the land, surveyed and
platted it, cultivated it, took its rents and profits, sold
and conveyed some of it, and offered to sell the remain-
der; and, in all respects, conducted itself as the absolute
owner thereof, subject only to the encumbrance of the
mortgage.    The facts that the proceeds of sale of por-
tions of the land, and of produce grown thereon, were
all paid over to plaintiff for application on the indebted-
ness in question, and that after April 23, 1889, the en-
tire profits of the land were delivered to him in lieu of
interest, cut no figure in the case, so far as we see,
except to show defendant's knowledge of the debt and

recognition of its liability thereon.   With the assent of defendant, signified in the manner we have stated, the title to plaintiff's land passed to defendant, and the contract of sale thus became fully executed; obviously defendant could not take the land in virtue of the contract made in its name and repudiate the obligation to pay therefor imposed by the same contract.   (Civ. Code, secs. 1589, 2311.)   The principle declared in section 2310 of the same code, illustrated by *Salfield* v. *Sutter County etc.* Co., 94 Cal. 546, and invoked by appellant, has no application to this case.   (*Borel* v. *Rollins*, 30 Cal. 419; *Rogers* v. *New York etc. Co.*, 134 N. Y. 211; *Gribble* v. *Columbus Brewing Co.*, 100 Cal. 72, and cases cited; *Fraser* v. *Bridge Co.*, 103 Cal. 79; 1 Morawetz on Corporations, secs. 548, 549.)   Appellant argues that the ratification or adoption of the contract by defendant cannot be considered because not alleged in the complaint; but we understand the rule to be that it is sufficient in such cases to aver that the contract was made by defendant without describing the processes by which it was made. (*Goetz* v. *Goldbaum* (Cal.), 37 Pac. Rep. 646.)

2. That a broker cannot represent both parties to a contract of sale in which discretion, judgment, and skill are to be exercised by him, unless they have knowledge of his double capacity and consent to be so represented, and that a party led unwittingly into a contract by means of such double agency may avoid the contract by methods suitable to the circumstances of the case, are propositions not to be denied.   (*Empire State Ins. Co.* v. *American Cent. Ins. Co.*, 138 N. Y. 446, and cases cited; *Cassard* v. *Hinman*, 6 Bosw. 8; *Hunsaker* v. *Sturgis*, 29 Cal. 142; *Davis* v. *Rock Creek Co.*, 55 Cal. 359.)   In this case the real estate broker, as a promoter of the corporation, occupied a relation of trust to the subscribers for the stock, and to the corporation itself.   (*Burbank* v. *Dennis*, 101 Cal. 100.)   If he failed to disclose to his associates his agency for the plaintiff, and his interest in effecting the sale, and if he was charged with any duty in their behalf beyond merely communicating to

plaintiff their determination in the matter reached independently of his suggestion or influence, then his conduct in negotiating the purchase as their agent also was a fraud upon them. (Civ. Code, secs. 2230–34.) But fraud as a defense to an action on contract is " new matter," which must be pleaded, and cannot be given in evidence under a mere denial of the execution of the contract. (Boone on Code Pleading, secs. 66, 67, 148; *Gushee* v. *Leavitt*, 5 Cal. 160; *Capuro* v. *Builders' Ins. Co.*, 39 Cal. 123; *Wetherly* v. *Straus*, 93 Cal. 283.) In the present instance, defendant made no attempt at defense on the ground that fraud had infected the transaction with plaintiff until more than six months after the trial, where the facts constituting the alleged fraud were divulged, and after the court had ordered judgment for plaintiff. We are therefore of opinion that, even if defendant had once the right to assail the contract because of the agency of said broker to sell as well as to purchase the land, the right was waived by failure to assert it; and that, under the circumstances appearing, the court did not abuse its discretion in refusing to allow an amendment to the answer setting up the alleged fraud.

3. But it is said that the fact that the broker represented both parties to the transaction for the sale of the land was a matter unknown to defendant at the time of its proceedings evincive of adoption and ratification of the contract with plaintiff, and hence the effect of those proceedings as confirmatory of the contract is nullified. (Civ. Code, sec. 2314.) That section provides that " a ratification may be rescinded when made without such consent as is required in a contract, or with an imperfect knowledge of the material facts of the transaction ratified, but not otherwise." Now, if it were conceded, as we do not concede, that defendant could obtain a rescission without some appropriate pleading showing the ground therefor, and that it had taken the steps necessary to give it the right to rescind, yet we think the evidence before us does not bring defendant's case

within the scope of said section 2314; it does not show but that all the promoters of the corporation, and the corporation itself, after it was organized, had full knowledge of the broker's relation to the plaintiff and interest in bringing about a sale; or that the price and terms of sale were not fixed by those connected with him in the purchase without his intervention, so that he had no discretion to exercise for their benefit, and was a mere mouthpiece to communicate to plaintiff the result of their deliberations. (See *Empire etc. Co.* v. *American etc. Co.*, 138 N. Y. 449.) Since defendant seeks to avoid the effect of an active affirmance of the contract with plaintiff during a period of several years, we think it had the burden of proof to show at least ignorance or imperfect knowledge of matters which might have influenced its conduct, and we also think that it failed to sustain such burden; this aside from the question of the necessity to plead the alleged defense. We find no substantial error in the record.

The judgment and order should be affirmed.