## THE ACCAME.*

*(District Court, E. D. Pennsylvania. March 17, 1882.)*

CHARTER-PARTY—VERBAL OFFER—RENEWAL OF PREVIOUS OFFER—CHANGE IN TERMS—CONFLICT OF TESTIMOMY—BURDEN ON PARTY ALLEGING CHANGE IN THE OFFER.

Libel *in personam* by the owners of the bark Accame against Gill & Fisher, Limited, to recover damages for breach of charter-party. The testimony disclosed the following facts:

On April 1, 1880, Pietro Accame, the agent of the vessel, gave to the respondents an option, known as a cable refusal, to charter the bark for a voyage to the continent of Europe, with full range of ports. This option expired April 3d, without having been taken advantage of by respondents. Afterwards Carl Gardeicke, the Philadelphia agent of the bark, made a verbal offer to Mr. Barker, one of respondents' firm, to charter the bark for a voyage to the continent of Europe, which offer was accepted. Mr. Gardeicke testified that his offer contained a condition excluding the port of Rouen. Mr. Barker, however, testified that nothing was said about the exclusion of Rouen, and that he understood the terms of the offer to be the same as those of the cable refusal. On the day of the acceptance of the offer Gardeicke prepared and sent to respondents a charter, which respondents the same day refused to sign because it contained a clause excluding Rouen. Subsequent negotiations failing to remove this misunderstanding as to the terms of the contract, and freights having declined, the owners of the bark chartered her at reduced rates, and filed this libel against respondents for damages.

*Edward F. Pugh* and *Henry Flanders,* for libellant.

*Richard C. McMurtrie,* for respondents.

BUTLER, D. J. The alleged contract is not satisfactorily proved. The contracting parties were Mr. Gardeicke, the libellant's broker, and Mr. Barker, of the respondents' firm. That Mr. Gardeicke intended to inform Mr. Barker that Rouen was to be excluded from the voyage, and believes he did so, is clearly shown by his subsequent conduct, as well as by his testimony taken in the case. But it is quite as clearly shown by the testimony of Mr. Barker, and his conduct at the time of the transaction, and immediately after, that he was not so informed. Mr. Gardeicke may have mentioned the subject, but Mr. Barker cannot have understood him. His telegrams of the same day, and his refusal to sign the written charter-party containing the exclusion, a few hours after the conversation, render this quite clear. The previous offer of the vessel without the exclu-

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

sion of Rouen, made it necessary to bring the proposed change in this regard very distinctly to Mr. Barker's mind. Although the offer had not been accepted, Mr. Barker was justified in regarding Mr. Gardeicke's subsequent proposition as a renewal of it, in the absence of specific information to the contrary; and this information I am satisfied Mr. Barker did not receive, however much Mr. Gardeicke may have intended and sought to convey it.

This view of the facts renders an examination of other questions discussed unnecessary. There was no contract; and the fact that the writing signed by libellant remained for some time in respondents' possession, under the circumstances shown, is unimportant. The libellant was fully informed, from the outset, that it would not be signed, and knew that it was at his disposal.

A decree must be entered dismissing the libel, with costs to respondents.