## MATHILDA MORRIS *et al. vs.* JOSEPH EWING.

Opinion filed November 4, 1898.

**Power of Attorney—Construction.**

The defendant and R., his brother, were owners of a tract of land in common. Defendant gave R. a power of attorney to sell all of defendant's right, title, and interest in the land, and to convey the same by deed of warranty. Assuming to act under said power of attorney, as well as in his own behalf, R., to secure a loan of $500, executed and delivered to the lender a mortgage upon said land. *Held,* that the power of attorney to sell and convey by deed of warranty conferred no authority upon R. to mortgage the interest of the defendant.

**Evidence Examined.**

Certain evidence considered, and *held,* that the same is insufficient to convince this Court, when sitting to try the case de novo, that the defendant participated in the loan transaction by accepting any part of the borrowed money, and hence that defendant is not estopped from claiming title to his interest in the land.

**Estoppel Must Be Pleaded.**

Whether an equitable estoppel in pais is required to be pleaded, considered, but, not being discussed by counsel, nor necessary to a decision, the point is not decided.

Appeal from District Court, Pembina County; *Sauter,* J.

Action by Mathilda Morris and others against Joseph Ewing. Judgment for plaintiff, and defendant appeals.

Reversed.

*Bosard & Bosard,* for appellant.

*E. W. Conmy,* for respondents.

WALLIN, J. This action was brought, under the statute, to quiet title to a quarter section of land situated in the County of Pembina. The following facts are conceded: That the land in question was on the 7th day of August, 1882, owned by the defendant, Joseph Ewing, and his brother, Robert Ewing, as tenants in common. That on the day stated, Robert Ewing, acting in his own behalf, and also assuming to act as the attorney in fact of his brother, the defendant, executed and delivered a mortgage in due form on said land to one William Camp, to secure a loan of $500 then paid over to Robert Ewing by said Camp. The mortgage was subsequently foreclosed by advertisement, and the premises were purchased by Camp at the foreclosure sale in the month of July, 1887; and thereafter, and in July, 1888, said Camp, after receiving a sheriff's deed pursuant to such foreclosure, conveyed the land to one Frank Morris. That said Morris died in October, 1895, and the plaintiffs, who are the heirs at law of Morris, claim title to the entire land, under a decree of the Probate Court of said county awarding title to the plaintiffs. It is further conceded that prior to the execution of the mortgage a certain power of attorney was made by the defendant to his brother, Robert, which was duly recorded, and the same was

in full force when said mortgage was made and delivered. By the terms of said power of attorney said Robert Ewing was authorized, in explicit language, to sell all of defendant's interest in said land, and to convey the same by deeds of warranty. Nothing was said in•the power of attorney about mortgaging the land. The defendant, by his answer to the complaint, alleges title and ownership of the land in fee simple in himself, and prays that a decree be entered quieting the title in himself, and awarding him possession of the land, and for general relief in equity. The District Court entered a judgment in favor of the plaintiffs, quieting the title of the plaintiffs to the whole of said premises, and excluding the defendant from any interest in the land.

The only findings of fact made by the trial court which are now controverted are the following findings: First. "That the mortgage of five hundred dollars hereinbefore referred to, given by Joseph Ewing, by Robert Ewing, under power of attorney, was given to secure a debt of five hundred dollars; that said debt was for the loan of money, made by said William Camp to and for Robert Ewing and Joseph Ewing; that Joseph Ewing received a portion of the money from said loan." Second. "The Court further finds that the said Joseph Ewing knew of the foreclosure proceedings, and that between the foreclosure sale and issuance of the deed by the sheriff he acknowledged and recognized the mortgage thereon as valid and binding, and agreed to pay the same." Appellant's contention is that these two findings of fact are not supported by the evidence. No evidence was offered at the trial in defendant's behalf, and it is conceded that he was not present at the trial. It is also conceded that the defendant at the time of the trial, and for some years prior thereto, was a nonresident of this state, and lived in the Dominion of Canada. Defendant's counsel seemed to reply at the trial wholly upon his contention that said power of attorney conferred no authority whatever upon the defendant's brother to incumber the land' by mortgage. This contention is undoubtedly sound, and must be sustained. The rule is now firmly established that a mere power to sell and convey by deed of warranty does not carry with it, by implication, a power to incumber land by mortgage. The power to execute a mortgage upon land does not confer authority which is merely less in degree than the power to sell. The power to mortgage is one distinctly differing in its nature from the authority to sell and convey. Many authorities might be added to those cited below in support of this well-established rule of property. *Wood* v. *Goodridge,* 52 Am. Dec. 771; *Jeffrey* v. *Hursh,* 49 Mich. 31, 12 N. W. Rep. 898; *Insurance Co.* v. *Bay,* 4 N. Y. 9; *Kinney* v. *Mathews,* 69 Mo. 520; *Morris* v. *Watson,* 15 Minn. 212 (Gil. 165); *Campbell* v. *Association* (Pa. Sup.) 30 Atl. Rep. 222; *Lamy* v. *Burr,* 88 Am. Dec. 135; 1 Jones, Mortg. 129; *Switzer* v. *Wilvers,* 24 Kan. 384.

Applying this rule to the facts of this case, the defendant is entitled to a decree quieting the title in himself to an undivided one-

half interest in the land in question, unless he has in some manner ratified the mortgage, or otherwise estopped himself from asserting title to the land. It cannot be claimed that the evidence shows or tends to show any formal ratification on defendant's part, either of the mortgage, or of any title acquired under the mortgage. Authority in writing is indispensable to an agency to mortgage land, and where, as in this case, a mortgage upon the land is executed by one who without authority assumed to act as an agent of the owner, any act of ratification on the part of the owner, to be valid, must be evidenced by some writing. Upon this point a provision of the Civil Code voices an elementary principle. Section 4315, Rev. Codes, reads, "A ratification can be made only in the manner that would have been necessary to confer an original authority for the act ratified, or when an oral authorization would suffice, by accepting or retaining the benefit of the act with notice thereof." There is no pretense in the case at bar that the defendant ever made a written ratification of the mortgage, or attempted to do so. Certain evidence hereafter set out is relied upon as sustaining the second finding of the trial court above quoted, which declares that "between the sale and issuance of the deed by the sheriff he (the defendant) acknowledged and recognized the mortgage thereon as valid and binding, and promised to pay the same." We do not think the evidence tends to show an express oral promise to pay the mortgage, but, as we have seen, an explicit oral agreement, made after the execution, delivery, and foreclosure of this mortgage, to pay the same, would be wholly inadequate, and would not operate as a valid ratification, either of the mortgage, or of any title acquired thereunder. The testimony of William Camp, the mortgagee, was given, and tends to show that all negotiations for the loan were made by Robert Ewing, and that the defendant did not participate personally in such negotiations, and was not present when the money loaned was paid over to Robert, nor when the mortgage was executed and delivered to Camp. Nor is there any evidence in the record showing that the defendant had any knowledge of the existence of the mortgage until some time long subsequent to the execution and delivery of the mortgage. Just when defendant first learned of the mortgage, does not appear. But Camp testified, against objection, that the loan was solicited by Robert Ewing as a loan for the use of both Robert and Joseph. It is clear, however, that inasmuch as it does not appear that the defendant had clothed his brother with any authority to either make the loan or execute the mortgage, and was not present at the time, defendant was not estopped by any representations made by Robert in obtaining the loan or in making the mortgage. This witness also testified to a conversation had with the defendant as follows: "I spoke to Joseph Ewing about removing the timber off, and he said he would pay me for the timber; he would make it all right; I should not lose anything." The date upon which this talk occurred does not distinctly appear. It probably occurred soon after

the foreclosure sale. Upon this feature Francis A. Hart also testified in effect as follows: "I heard a conversation between Mr. Joseph Ewing and Mr. Camp. I was standing near, and, after I went out, Mr. Ewing met me between the corner and his place, and he says, 'We have cut wood on this place all right, and we have been selling it to pay the mortgage.' It was either fifteen or eighteen cords. And he says, 'I agreed to pay Major Camp for this wood.' And he says, 'I don't know how we are going to raise the money to redeem this place.'" It is apparent from this feature of the evidence that at the time the two conversations testified to, relating to cutting timber off the land, occurred, the defendant stated first, and in the conversation with Camp, that he would pay for the timber so cut from the land, and, in the conversation testified to by Hart, defendant stated that he agreed to pay for some wood,— 15 or 18 cords,—which the defendant and some other person had cut on the land. In the same conversation the defendant said, "I don't know how we are going to raise the money to redeem this place." Comment upon this evidence is unnecessary to show· that the same is not, and does not purport to be, even an oral ratification of the assumed agency of Robert Ewing in making the mortgage, nor does it purport to contain a promise to pay the debt evidenced by the mortgage. Hence these conversations fail utterly to establish any ratification of the assumed agency of Robert Ewing. At furthest, these conversations show only a purpose of the defendant to pay for certain timber, and possibly imply some obligation, either legal or moral, to do so; but the basis of such obligation, whether legal or moral, nowhere appears in the evidence. Upon the supposition that the defendant considered himself at that time bound by the mortgage, he certainly was not bound to pay for all timber cut, and yet this seems to have been the ·purport of the conversations we are considering. But, as we have said, these conversations, all and singular, do not tend to establish a ratification on defendant's part.

The only other evidence relied upon, or in the record, tending to support the finding of the trial court that "Joseph Ewing received a portion of the money from said loan," is that of one Merrick, who testified that he knew the parties to this action, and that they gave a mortgage to William Camp, and further testified: "I have had a talk with Joseph Ewing, the defendant, about this mortgage. This conversation was this, or nearly this: Robert Ewing and Joseph Ewing was in my office one day, and they were talking about Major Camp making some objection to cutting wood off from a piece of land up the river,—this Pembina river; and Joseph Ewing made the remark that Robert had got the money from the old man, and mortgaged it to him, and we don't want to beat him out of· anything, and didn't want to let anybody cut wood on it; that they intended to pay him up everything. This conversation occurred between myself and Joseph Ewing. Q. Did he admit that he had mortgaged the land to Major Camp? A. His remark, as

near as I can remember it, was that 'we mortgaged it;' meaning Joseph Ewing and Robert Ewing together. Q. At the time they were joint owners—Robert Ewing and Joseph Ewing—of this property? A. To my best knowledge, they were. Q. Did Joseph Ewing tell you they were joint owners, or Robert Ewing? A. He gave me to understand 'we have mortgaged the land to Major Camp.' I don't think there was more conversation about ownership, but he says, 'We have mortgaged that to Major Camp, and got his money, and we propose to pay him.' That was the substance of the conversation." It is strenuously contended that this evidence is, in effect— First, an admission that the mortgage, when made, was intended to be the joint mortgage of Robert and Joseph Ewing; and second, an admission by the defendant that he personally received a portion of the money loaned on the security of the mortgage. As to the first branch of the alleged admission, it is needless to say that any admission made by the defendant in a casual conversation had with a stranger at a time not less than five years subsequent to the execution and delivery of the mortgage would not operate to validate the mortgage as a joint mortgage, if it was not such in law. The conversation referred to might, however, throw some light upon the views entertained by the defendant at that time touching the character and legal effect of the instrument; but his views at that time would be entirely unavailing, either to build up or destroy any legal rights or obligations arising under the instrument.

But it is contended by counsel for the plaintiffs that the evidence of Merrick shows that the defendant participated in the fruits of the mortgage, by receiving a portion of the borrowed money, and that by so doing an equitable estoppel arises, which prevents defendant from now claiming the land, and consequently operates to validate the mortgage, and to confirm all rights derived under it. It is doubtless correct, as a legal proposition, that, where a party elects to accept the fruits of a transaction, he will be held to be estopped from claiming both the fruits and the property from which the same are derived. After accepting the benefits of a transaction, a party will not be permitted to repudiate the transaction. This established rule or doctrine of equity is expressed in Rev. Codes, § 3865, as follows: "A voluntary acceptance of the benefits of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known or ought to be known to the person accepting." See, also, *O'Shea v. Rice* (Neb.) 69 N. W. Rep. 308; *Beidman v. Goodell* (Iowa) 9 N. W. Rep. 900; *Nichols v. Shaffer* (Mich.) 30 N. W. Rep. 383 (see authorities in note at end of the case); *Wendell v. Van Rensselaer,* 1 Johns. Ch. 344, and cases cited in notes; *State v. Stanley,* 14 Ind. 409; *Smith v. Warden,* 19 Pa. St. 424; *Mathews v. Gilliss,* 1 Iowa 242; *Haynes v. Seachrest,* 13 Iowa 455; *Deford v. Mercer,* 24 Iowa, 118; Herm. Estop. & Res. Jud. § 931; Mechem, Ag. § 148; *Grogan v. San Francisco,* 18 Cal. 590; *Borel*

v. *Robbins,* 30 Cal. 409; *Delano* v. *Jacoby,* 96 Cal. 275, 31 Pac. Rep. 290. But, after a very careful consideration and review of the evidence in the light of the law of the case, we are constrained to hold that the same is not, in our judgment, of sufficient weight and credibility to establish the fact that the defendant received any part of the borrowed money. We remark first that, aside from the testimony of Merrick, there is not a scintilla of evidence in the record to establish the fact of such acceptance. It should be further noted that the evidence relied upon consists of a certain conversation which the witness claims to have overheard between the two brothers, and in which the witness does not appear to have had any reason to participate personally, and concerning which it does not appear that the witness had any interests to subserve, or connection whatsoever, or any reason to remember the same. The abstract fails to disclose the exact date of the conversation referred to, but it is conceded that it occurred, if at all, at least six or eight years prior to the date of the trial at which the testimony was given, and several years subsequent to the execution of the mortgage. A careful scrutiny of this testimony will further disclose the fact that the same is directly self-contradictory upon the crucial question of accepting the proceeds of the loan. In one part of his testimony Merrick states as follows: "Joseph Ewing made the remark that Robert had got the money from the old man, and mortgaged it to him." This is explicit, and accords with the claim made by the defendant's counsel to the effect that Robert alone made the loan, and that the defendant did not either authorize the loan, or receive any part of the funds borrowed. It is true that the witness, on being pressed and repeatedly questioned by the plaintiffs' counsel, puts a different construction upon this far-away conversation, and declares that he understood the defendant to state as follows: "We have mortgaged that to Major Camp, and got his money, and we propose to pay him." There is no explanation in the record of this discrepancy in the evidence. It does not appear why the defendant stated as he did (referring to his brother and himself), "We got his money, and we propose to pay him." It is enough to say that the latter statement is in square opposition to the former upon both features, viz: as to making the mortgage and as to receiving the money. It is enough to say that the character of the evidence is unconvincing, and is of such a nature and grade that it fails to establish an equitable estoppel to our satisfaction. It is the settled policy of the law that titles to real estate shall be safeguarded by written documents duly recorded in an official registry. Nor can estates in land be transferred or divested by mere spoken words. Estoppels are said to be odious, and it is well settled that the evidence necessary to defeat a perfect legal title to real estate evidenced by deeds regularly recorded must be clear, strong and convincing. This record fails to embody any such evidence upon the direct question of participation in the proceeds of the loan. Not only are these alleged declarations of the de-

fendant uncorroborated by other evidence, but the same, being mere verbal declarations, belong to a class of evidence which experience has shown to be very untrustworthy, *i .e.* evidence which is received by courts with great caution in any case, and particularly where it is sought by mere verbal admissions to build up an equitable estoppel. See 1 Greenl. Ev. § § 45, 200; 2 Rice, Ev. p. 441. But counsel argue that, if the defendant never did accept any part of the borrowed money, it would have been an easy matter for him to take the stand and declare under oath that he did not do so. This argument is specious, but, when the issues involved in the case are considered, its strength is wholly dissipated. What were the issues? The very brief complaint declares that the plaintiffs are the owners in fee simple of the whole land in controversy. It contains no intimation that the plaintiffs depend wholly or at all upon an equitable estoppel in pais to establish title to the interest of the defendant in the land. The answer alleges ownership in defendant, but goes further, and asks for affirmative relief, ousting the plaintiffs from possession and quieting title in defendant. This answer embodied a counterclaim. See *Betts* v. *Signor,* 7 N. D. 399, 75 N. W. Rep. 781 and cases there cited. To this counterclaim no reply was made by the plaintiffs. A motion for judgment for want of a reply would therefore have been proper in the trial court. Rev. Codes, § 5278. No such motion was made, but we note the fact that the defendant at the trial persisted in objecting to all of the evidence offered by plaintiffs in support of the feature of estoppel, upon which alone plaintiffs depended for success in the action. The point was not made by counsel either at the original argument or upon the reargument, but we strongly incline to the view that the failure to reply was not waived, and that the burden was upon the plaintiffs to allege, by way of reply to the counterclaim, the very facts which they sought to establish by evidence, and which it is claimed constitute the equitable estoppel. Had such facts been set out in a reply to the counterclaim, the defendant would have been apprised in advance of the facts which were sprung for the first time in eliciting the evidence. If defendant did not in fact receive any part of the borrowed money, he would have no reason whatever to suppose in advance of the trial that any such evidence would be offered, or any such claim made, by plaintiffs. It appears, therefore, that upon the issues as framed by the pleadings the defendant is not guilty of any laches in not appearing personally for examination as a witness. He might, as a prudent man, rest upon the advice of counsel, and remain away from the trial, and do so upon the assurance of his counsel, advisedly made, that his case rested wholly upon documentary evidence, which could be obtained easily by counsel without defendant's personal attendance in court. Had the point been urged upon our attention, we are now inclined to think that we would have excluded all evidence of the facts constituting the alleged estoppel, upon the ground that the plaintiffs had failed to allege the controlling facts of their case, *i. e.* the

equitable estoppel. But as this question is new in this jurisdiction, and involves a point of some doubt, under the authorities, we are not inclined to pass upon it hastily, nor until the same is discussed by counsel, and hence we shall not further consider it in the case at bar.

The case will be reversed upon the ground that plaintiffs, having the burden, have failed to establish the fact to our satisfaction that the defendant participated in the loan by accepting the proceeds, or any part thereof, and upon the ground that the defendant has never ratified the mortgage in any legal manner, or at all. The Court below will enter a judgment quieting defendant's title to an undivided one-half interest in the land described in the complaint, and awarding defendant his costs and disbursements. It is proper to add, in view of the fact that the views of this Court have been wholly changed with respect to the disposition of this case, that Judge Corliss, who participated in the original decision of the case, and who has resigned his office since the case was first decided, participated in the order granting the rehearing, and is now entirely satisfied with the final disposition made of the case.

BARTHOLOMEW, C. J., concurs.

YOUNG, J., having been of counsel, did not sit in the case, or take any part in the decision.