MARY D. SILL

*v.*

WILLARD H. PATE *et al.*

*Opinion filed October 23, 1907.*

1. EVIDENCE—*when a decree is not admissible.* A decree in a chancery proceeding brought by a principal against her agents, upon the ground of fraud in the obtaining of certain notes and deeds which the defendants negotiated, is not admissible in a proceeding under a supplemental bill against the purchasers of such notes, who were not parties to the original proceeding and whose purchases were made long before the original suit was begun.

2. BILLS AND NOTES—*purchaser of note from agent is bound to know the latter's authority to sell.* Possession, by an agent, of a collateral note duly executed by his principal and delivered to him with collateral security duly endorsed to pass title upon delivery, implies authority to make the loan on the collateral note and deliver the collateral as security, but does not, as against a purchaser having notice of the facts by the terms of the collateral note, imply authority to sell the collateral security.

3. SAME—*when purchaser of a note will be protected.* Where the owner of a note and trust deed endorses the note in blank, and delivers the same, with the trust deed, to her agent with written authority to negotiate the sale thereof, a purchaser thereof from the agent will be protected in case of the agent's subsequent defalcation, whether the agent told him who owned the note or not.

4. PRINCIPAL AND AGENT—*a ratification must be based upon knowledge.* A principal will not be deemed to have ratified the unauthorized act of an agent unless he has full knowledge of the facts.

APPEAL, from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. O. E. HEARD, Judge, presiding.

It appears from the pleadings and proofs that on February 5, 1902, the appellant was the owner of a promissory note bearing date October 26, 1895, for the sum of $2500, bearing interest at six per cent per annum, payable semi-annually, signed by Mary A. Jones and Stephen B. Jones, payable to the order of themselves and by them endorsed, and that the time of payment of said note at its maturity was extended by the appellant for five years, the payment of which note was secured by a trust deed upon real estate located in Cook county; that on February 5, 1902, the appellant executed her promissory note for the sum of $1600, due one year after date, to the order of Willard H. Pate, with interest at the rate of six per cent per annum, which note recited said $2500 note and trust deed had been deposited with said $1600 note as collateral to secure its payment, which $1600 and $2500 notes and said trust deed were delivered to one William Freudenberg by the appellant, accompanied by the following letter:

"APPLICATION FOR COLLATERAL LOAN.

"CHICAGO, ILL., *Feb. 5, 1902.*

"*Wm. Freudenberg, Esq., 516 Chamber of Commerce, Chicago, Ill.*

"DEAR SIR—I hereby authorize you to negotiate for me a collateral loan for sixteen hundred dollars ($1600) on collateral which is described in the collateral note which I have signed to-day, and the proceeds of this loan to be paid to Frank Weiss after deducting of said amount of sixteen hundred dollars ($1600) the following items: Forty dollars ($40), being two and one-half per cent (2½%) on said amount applied for, as commission; fifty dollars ($50) for a guarantee policy issued by the Chicago Title and Trust Company; twelve dollars ($12) for a two thousand dollar ($2000) fire insurance policy on premises 1001 Wilcox ave.; also for recording extended agreement.          MARY D. SILL."

—which letter bears the following endorsement:

"Received of Wm. Freudenberg the above amount, less expenses mentioned.

CHICAGO, *Febr. 13th, 1902.* FRANK WEISS."

—that on February 11, 1902, Willard H. Pate received said promissory notes and trust deed from William Freudenberg and delivered to said Freudenberg his check upon the Commercial National Bank of Chicago for the sum of $1600, less $20 retained as one-half of Freudenberg's commission; that on August 12, 1902, said Willard H. Pate purchased from William Freudenberg the said $2500 note and trust deed, and delivered to him said $1600 note, and his check upon the same bank for $847.05, in payment for said $2500 note and trust deed.

It further appears that on April 23, 1902, the appellant was also the owner of a promissory note bearing date May 11, 1901, for the sum of $2000, bearing interest at the rate of six per cent per annum, payable semi-annually, signed by Charles M. Mueller, payable to the order of the appellant, the payment of which note was secured by trust deed upon real estate situated in the county of Cook. On April 23, 1902, the appellant endorsed said $2000 note in blank and delivered the same to said William Freudenberg, with the following letter:

"APPLICATION FOR COLLATERAL LOAN.

"CHICAGO, ILL., *Apr. 23d, 1902.*

"*Wm. Freudenberg, Esq., 516 Chamber of Commerce, Chicago, Ill.*

"DEAR SIR—I hereby authorize you to negotiate for me a collateral loan for thirteen hundred dollars ($1300), which is described in the collateral note which I have signed to-day, and the proceeds of this loan to be paid to Frank Weiss after deducting of said amount of thirteen hundred dollars ($1300) thirty-two dollars and fifty cents ($32.50), being two and one-half per cent on said amount applied for, as commission; thirty-five dollars ($35) for a guarantee policy issued by the Chicago Title and Trust Company; ten dollars ($10) for insurance. MARY D. SILL."

—which letter bears the following endorsement by Weiss:

"Received the above amount this 26th day of April, 1902.

FRANK WEISS."

William Freudenberg testified that he made the $1300 loan himself from funds obtained from his bank and held the $2000 Mueller note and trust deed as security therefor, and that when the note was subsequently sold by him to Cline he paid himself the $1300 loan; that on May 26, 1902, the appellant signed and delivered to William Freudenberg the following letter:

"CHICAGO, *May 26th, 1902.*

"*Mr. Wm. Freudenberg:*

"DEAR SIR—I hereby authorize you to negotiate for me the sale of a two thousand ($2000) note secured by trust deed on the following described property: Lot 13, block 11, in Watson, Tower & Davis' subdivision of the west half (W. ½) of the north-west quarter (N. W. ¼) of section six (6), township 39, north, range 14, east of the third P. M., also known as No. 701 North Oakley ave., signed by Chas. M. Mueller, bearing interest at the rate of six per cent per annum. I hereby agree to pay you two and one-half per cent as commission on such sale. You will also deduct $1300 from said amount, which I have already received.

MARY D. SILL. (Seal)"

In the latter part of May, 1902, said William Freudenberg sold said $2000 note and trust deed to Hubert S. Cline, who paid him therefor $2000.

A copy of the following instrument in writing purporting to be signed by the appellant, the original having been lost, was introduced in evidence:

"*Mr. Freudenberg*—Please hand Mr. Frank Weiss the money due me of mortgages sold by you, signed Charles M. Mueller and Susan A. Jones.

MARY D. SILL."

And William Freudenberg testified he paid the proceeds received from the sale of the $2500 and $2000 notes either to Frank Weiss or the appellant.

It further appears from the evidence that the appellant was a maiden lady about seventy-six years of age in 1902, residing in the city of Chicago; that she owned the promissory notes and trust deeds above referred to, and the inference is she had other property which Frank Weiss swindled her out of, as in the bill filed by her against Weiss and Freudenberg, herein referred to, she recovered a money de-

cree against Weiss for the sum of $10,641.64, which amount greatly exceeded the amount of the Jones and Mueller notes; that she was a woman of education and refinement but of little business experience, and relied largely upon others to assist her in her business transactions; that she became acquainted with Frank Weiss in the city of Chicago in the year 1901, where he was then in the real estate business; that he soon obtained her complete confidence; that she relied upon him as her trusted adviser; that he soon induced her to take a room at his house, where he and his two children resided, and that he borrowed money of her, and she testified she relied upon him to such an extent that she signed any papers that he asked her to sign, without question. She testified he first obtained the possession of the Jones note and trust deed by pretending that the title to the real estate covered by the trust deed was defective and he desired to show the trust deed to William Freudenberg and have it corrected, and she says Weiss and Freudenberg both told her the defect had been remedied. She further testified that Weiss borrowed $75 of Freudenberg and gave his note to him for that amount, and that through the advice of Weiss she deposited the Jones note and trust deed with Freudenberg, so that he could collect the interest when due and re-pay himself said $75 loan. She also testified that Weiss borrowed $60 of Freudenberg and gave him his note for that amount, and that under the advice of Weiss she endorsed the Mueller note and delivered said note and trust deed to Freudenberg, so that he could collect the interest thereon and re-pay himself that claim. She admits her genuine signature appears upon the $1600 collateral note, and to the letter authorizing said collateral loan, and upon the back of the $2000 note, and to the letter authorizing the $1300 collateral loan, and to the letter authorizing the sale of the $2000 note and trust deed, but says she must have signed them because Frank Weiss asked her to; that she did not knowingly sign the $1600 note or said

letters for the purpose of borrowing money or for the purpose of selling said notes and trust deeds. In the summer of 1902, and after the said notes and trust deed had been turned over to Freudenberg, Frank Weiss absconded, and the appellant then realized that she had been swindled by Weiss and Freudenberg, and thereupon filed a bill in chancery to the May term, 1903, of the circuit court of Cook county, charging fraud against Weiss and Freudenberg in obtaining possession of said Jones and Mueller notes and trust deeds, and asking that they be required to surrender said notes and trust deeds to her, or in default thereof to account to her for their proceeds. Weiss was served by publication and Freudenberg personally. Freudenberg appeared and answered. Weiss was defaulted, and upon the trial the court found that Weiss and Freudenberg had fraudulently obtained possession of the said Jones and Mueller notes and trust deeds, and rendered an alternative decree against them that they deliver to the appellant said notes and trust deeds, or that they pay to her, in lieu of their surrender, the amount thereof, (fixing the amount,) and that execution issue therefor.

It developed shortly before the trial that the Jones note and trust deed had been sold by Freudenberg to Willard H. Pate for his mother, Rebecca Pate, and that the Mueller note and trust deed had been sold by Freudenberg to Hubert S. Cline, and that they then were holding said notes and trust deeds, and after the decree was entered in the original case this bill, which is in the nature of a supplemental bill, was filed by the complainant against Willard H. Pate and Rebecca Pate and Hubert S. Cline, alleging that they had conspired with Weiss and Freudenberg to cheat and defraud the appellant out of said Jones note and trust deed and said Mueller note and trust deed; that they had paid no consideration for the pretended transfer thereof to them and had full notice of the rights of the complainant thereto, and asking that they be required to sur-

render the possession of said notes and trust deeds to the appellant, and in default thereof that they be required to account to the appellant for their value. Answers and replications were filed and a trial was had before the chancellor, and a decree was entered dismissing the bill for want of equity, which decree has been affirmed by the Appellate Court for the First District, and a further appeal has been prosecuted to this court.

HENRY C. ADAMS, (DEWITT C. JONES, of counsel,) for appellant.

WILLIAM T. UNDERWOOD, for appellees Willard H. Pate and Rebecca Pate.

JAMES MAHER, for appellee Hubert S. Cline.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

The court admitted in evidence the bill but declined to admit in evidence the decree in the case commenced by the appellant against Freudenberg and Weiss, and the first contention of the appellant is that the court erred in declining to admit in evidence the decree in that case against the defendants. The defendants were not parties, either complainant or defendant, in that suit, and they had purchased said notes and trust deeds long before the suit was commenced. We think it therefore too plain for argument that the decree entered in that case did not bind them and that the court did not err in declining to admit the same in evidence. *Bradley* v. *Luce,* 99 Ill. 234; *Gage* v. *Parker,* 178 id. 455.

The next contention is, that the defendants were not *bona fide* purchasers of said notes. We have read all the evidence in this record and find nothing therein which indicates to our minds, in the slightest degree, that either of

the Pates or Cline, as alleged in the bill, was in any way engaged in a conspiracy with Weiss and Freudenberg, or either of them, to defraud the appellant out of her property. Freudenberg was a broker. He borrowed of Rebecca Pate, through her son, Willard H. Pate, $1600 upon the collateral note of the appellant, for one year, secured by the Jones note and trust deed. The collateral note was in legal form, and the collateral accompanying it so endorsed as to transfer title by delivery, and up to the amount of the $1600 note the Pates were clearly *bona fide* purchasers of the Jones note and trust deed from Freudenberg. (*Mayo* v. *Moore,* 28 Ill. 428; *Saylor* v. *Daniels,* 37 id. 331.) Willard H. Pate and Rebecca Pate, however, had full notice, from the recitals contained in the $1600 collateral note, that the Jones note and trust deed were the property of the appellant, and while they had the right to presume, from the fact that William Freudenberg held the $1600 collateral note, duly executed, and the collateral so endorsed as to transfer title, in his possession, that Freudenberg had authority to make the $1600 loan and deposit the Jones note and trust deed to secure its payment, they had no right, from such possession, to presume that Freudenberg had the right to negotiate said Jones note and trust deed. In other words, Willard H. and Rebecca Pate were bound to take notice, from their knowledge of the fact that the note and trust deed belonged to the appellant, that the equity in said Jones note and trust deed, over and above said $1600 represented by the collateral note, was in the appellant, and when they made the purchase of the $2500 note from Freudenberg, to make the purchase valid they were bound to know he was acting with the authority of appellant and that Freudenberg had authority to make such transfer. (*Chicago Title and Trust Co.* v. *Brugger,* 196 Ill. 96.) And as it clearly appears Freudenberg had no authority to use said Jones note and trust deed except as collateral to secure the payment of said $1600, we are of the opinion that Willard H. Pate

and Rebecca Pate should be held to account to the appellant for the Jones note and trust deed, subject to the payment to them of the amount of said collateral note of $1600.

It appears that Hubert S. Cline, who had been a mechanic in the employ of the fire department of the city of Chicago for many years, was informed by Willard H. Pate, who was secretary of the Woolf Clothing Company and whom he had known for some years, that Freudenberg had notes and trust deeds and other securities for sale; that Cline had about $2000 which he desired to invest, and sent Mrs. Cline to Freudenberg with a view to purchase some of said securities; that she reported that she had seen in Freudenberg's possession the Mueller $2000 note and trust deed. Shortly thereafter Mr. and Mrs. Cline went to look at the property covered by the trust deed, and finding it satisfactory, Mr. Cline instructed Mrs. Cline to go to Freudenberg's office and purchase the Mueller $2000 note and trust deed, which she did within a short time. She paid therefor a certificate of deposit in one of the banks of Chicago for $1945 and $55 in cash, and received the $2000 note endorsed by appellant in blank, the trust deed, guarantee policy, etc. The only evidence as to any knowledge of the Clines that the appellant claimed any interest in the Mueller note and trust deed which they were purchasing is, Mrs. Cline testified that Freudenberg informed her, at the time she bought the note and trust deed, that an old lady,—a Miss Sill,—wanted to get all her money together and she was selling her paper. She says in one part of her testimony, she supposed that Mr. Freudenberg was the owner of the note and trust deed and she was buying it from him, and in another part of her testimony, that she supposed she was buying it from Miss Sill. This transaction differs from the sale of the equity in the Jones note and trust deed to the Pates in this: that Freudenberg had the authority of the appellant, in writing, to sell the Mueller note and trust deed, while he had no authority to sell the

Jones note and trust deed. The question whether Freudenberg was authorized to sell the Mueller note and trust deed at the time he sold them to Hubert S. Cline, through his wife, was a question of fact. The chancellor heard and saw the witnesses, and he held that appellant had authorized Freudenberg to sell said note and trust deed, and we can not disturb his finding upon that question of fact unless it appears from the evidence to be palpably wrong, which we do not think it does. Appellant admits she endorsed said note and delivered the note and trust deed to Freudenberg, and that she signed the letter of May 26, 1902, which authorized him to negotiate that note and trust deed. She could read and write and was a woman of ordinary intelligence, and her only excuse for having placed said letter and the Mueller note, endorsed in blank, and the trust deed, in Freudenberg's hands is, that she was overreached by Weiss and Freudenberg.

It is apparent that Weiss and Freudenberg, after they procured the funds of the appellant from the sale of her securities, converted such funds to their own use, but it is not clear from this record that the appellant did not consent that $1600 might be borrowed from the Pates upon her note, secured by the Jones note and trust deed, and that the Mueller note and trust deed might be sold by Freudenberg, and that she only took the position that she had not consented to said loan and sale after she knew that Weiss had absconded and the funds derived from the Pate loan and the sale of said Mueller note and trust deed had been embezzled by Weiss and Freudenberg, whom, she testified, she trusted up to the time that Weiss absconded; and the fact that Freudenberg stated to Mrs. Cline, at the time of the sale to her of the Mueller note and trust deed, that they belonged to an old lady who wanted to sell them and get all her money together, is not inconsistent with the view that Freudenberg had authority to make the sale of the Mueller note and trust deed; and if Freudenberg, at the time he

made the sale to Cline of the Mueller note and trust deed, had authority from the appellant to make the sale, it is immaterial whether he at that time notified Mrs. Cline to whom the note and trust deed really belonged or not.

It is also urged that by the copy of the lost memorandum introduced in evidence it appears that the appellant ratified the sale of the Jones note and trust deed and the sale of the Mueller note and trust deed. As we understand this record, the equity of the appellant in the Jones note and trust deed was not sold to the Pates until the 12th of August, 1902, and that Weiss had absconded long before that time. Therefore, if that memorandum should be treated as a ratification of the sale to Cline of the Mueller note and trust deed, it could not amount to a ratification of the sale of the Jones note and trust deed to the Pates, as the sale of the Jones note and trust deed took place after the execution of that paper and after Weiss had absconded, and the general rule is that a party will not be deemed to have ratified an unauthorized act of an agent unless he does so with full knowledge of all the facts, and there is no pretense in this record that the appellant knew of the sale to the Pates of the Jones note and trust deed until just before the trial of this suit.

The judgment of the Appellate Court affirming the decree of the circuit court will be affirmed in all things except in so far as said decree dismissed the bill as to Willard H. Pate and Rebecca Pate, and as to them the decree of the circuit court dismissing the bill and the judgment of the Appellate Court affirming that part of the decree will be reversed, and the cause as to them will be remanded to the circuit court for further proceedings in accordance with the views expressed in this opinion. One-half of the costs attending this appeal will be paid by the appellant and one-half by Willard H. Pate and Rebecca Pate.

*Reversed in part and remanded.*