### MARQUSEE v. INSURANCE CO. OF NORTH AMERICA.

### KLINE BROS. & CO. v. LIVERPOOL & LONDON & GLOBE INS. CO., Limited.

(Circuit Court of Appeals, Second Circuit.   February 17, 1914.)

Nos. 117, 118.

1. CORPORATIONS (§ 406*)—OFFICERS—PRESIDENT—AUTHORITY.

The president of a private corporation by virtue of his office alone has no power to bind the corporation by his contracts, but his power to contract on behalf of the corporation must be found in its organic law, or in a delegation of authority from it, either directly or through its board of directors formally expressed or implied from habit or custom of doing business.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1611–1614; Dec. Dig. § 406.*]

2. CORPORATIONS (§ 432*)—CONTRACT—EXECUTION — RATIFICATION — BURDEN OF PROOF.

Where the acting president of a private corporation, without authority, obtained certain fire insurance on its behalf on which the corporation subsequently sought to recover, the burden of proof of ratification of his act in making the contract was on the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1717, 1718, 1724, 1726–1735, 1737, 1743, 1762;   Dec. Dig. § 432.*]

3. CORPORATIONS (§ 433*)—POLICY—CONTRACT—RATIFICATION.

Where the acting president of a private corporation without authority procured certain insurance for it, whether particular facts relied on amounted to a ratification of his act by the corporation was a question of law for the court.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1706, 1719, 1738–1744;   Dec. Dig. § 433.*]

4. CORPORATIONS (§ 426*)—UNAUTHORIZED ACTS OF PRESIDENT—RATIFICATION.

Where the acting president of a private corporation obtained insurance on its behalf, without authority, his act in tendering to the agent of the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

insurance company an amount equal to the premium due on the policy did not amount to a ratification of his act in making the contract for the policy by the corporation, under the rule that the party to ratify the act of an agent made for its benefit must be the party who had authority to make the contract in the first instance.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1596, 1702–1704, 1707, 1708, 1710–1716; Dec. Dig. § 426.*]

5. CORPORATIONS (§ 426*)—CONTRACTS—ACTS OF OFFICERS—RATIFICATION—MODE.

Where a corporation's articles and by-laws provided that the power to make all contracts, or obligations, of any kind rested with the board of directors acting jointly, but that the directors, with the consent of each and all members of the board in writing might agree to and transact any business specified in the writing without actually holding a meeting for that purpose, the unauthorized act of the corporation's acting president in obtaining insurance for the corporation could only be ratified in the mode prescribed.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1596, 1702–1704, 1707, 1708, 1710–1716; Dec. Dig. § 426.*]

6. CORPORATIONS (§ 426*)—INSURANCE (§ 142*)—CONTRACT—POLICY—RATIFICATION BY INSURED.

Where the acting president of a private corporation obtained insurance for it without authority, the fact that G. & Co., after a loss, assuming to act as adjusters for the corporation, notified the insurance company of the loss, to which the latter replied that its Southern manager would look after the adjustment, did not constitute a ratification of the policy on the part of the corporation, in the absence of proof that G. & Co. were authorized by the corporation to do what they did, nor did the insurer's reply to the notice constitute a recognition of the policy; it appearing that at the time it had no knowledge of the facts constituting its invalidity.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1596, 1702–1704, 1707, 1708, 1710–1716; Dec. Dig. § 426;* Insurance, Cent. Dig. §§ 263, 264; Dec. Dig. § 142.*]

7. INSURANCE (§ 247*)—POLICY—VALIDITY—RATIFICATION—WITHDRAWAL BY INSURER.

Where the acting president of a private corporation, without authority, obtained insurance for it, and his act in doing so was not ratified prior to loss, the insurer prior to ratification was entitled to withdraw from the contract, and did so by giving notice that it elected to treat the policy as void from the beginning.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 534–536; Dec. Dig. § 247.*]

In Error to the District Court of the United States for the Southern District of New York.

Actions by Julius Marqusee against the Insurance Company of North America and by Kline Bros. & Co. against the Liverpool & London & Globe Insurance Company, Limited. Judgment for defendant in each case, and plaintiffs bring error. Affirmed.

The plaintiff is the assignee of Kline Bros. & Co., a Florida corporation. The defendant is a corporation organized under the laws of the state of Pennsylvania.

The complaint avers, among other things, that at the city of Quincy, Fla., plaintiff's assignor and the defendant entered into a contract of insurance on March 16, 1909, against loss by fire to an amount of $2,500 on the stock and merchandise consisting of leaf tobacco. The property insured was totally destroyed by fire on March 19, 1909. It is further averred that the loss and

damage was over $112,000 and that the concurrent insurance aggregated a like sum. On April 27, 1909, defendant notified Kline Bros. & Co. that it denied all liability on the policy, and that although duly demanded it refused to pay its share of contribution in said loss aggregating $2,500.

The defendant denied practically every material allegation of the complaint. It denied that Thomas M. McIntosh, who negotiated the contract of insurance on behalf of the plaintiff's assignee, had any authority to make the contract.

The court below entered judgment in favor of the defendant on a direction of a verdict.

Fried & Czaki, of New York City (Marion Erwin and Frederick M. Czaki, both of New York City, of counsel), for plaintiff in error.

Ivins, Mason, Wolff & Hoguet, of New York City (Theodore A. Hammond, of Atlanta, Ga., Robert L. Hoguet and Randolph W. Childs, both of New York City, of counsel), for defendant in error.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The question presented in this case involves the validity of a contract of fire insurance.

A charter having been granted by the state of Florida incorporating Kline Bros. & Co., an organization meeting was held on December 16, 1908, at which by-laws were adopted and the directors were chosen. Immediately thereafter the directors met and elected one McIntosh president. On March 8, 1909, the stockholders met, and new directors were chosen who subsequently met and elected Morris Kline president. The newly elected officers demanded the books, records, and property of the company, which demand was not complied with by the old officers, who insisted that the new officers had not been duly elected. While this dispute was pending, McIntosh, who was still acting as president, applied to the defendant's agent for insurance, and on the same day the policy in suit was made out and delivered. Three days later the warehouse in which the subject of the insurance was stored was destroyed by fire. The premium had not then been paid, but within a week after the fire McIntosh tendered the premium, which was refused. The defendant has set up several grounds of defense, one of which is that McIntosh had no authority to negotiate the insurance.

[1] It is quite immaterial whether McIntosh at the time he undertook to contract for the insurance was de facto or de jure president. So far as his authority to make the contract is concerned, this case is not different in its material facts from that of Marqusee v. Hartford Fire Insurance Co., 198 Fed. 475, 119 C. C. A. 251, 42 L. R. A. (N. S.) 1025, in which this court decided that McIntosh was not empowered to make a contract of insurance binding on Kline Bros. & Co. The law is well settled that the president of a private corporation has not, by virtue of his office alone, power to bind the corporation by his contracts. His power to do so must be found in the organic law of the corporation or in a delegation of authority from it directly or through its board of directors formally expressed, or implied from a habit or custom of doing business. The charter conferred no contractual power on the president, and the by-laws provided that all

contracts should be made by the board of directors. The contract of insurance was never authorized by the directors. And there was no evidence that by custom the president had been recognized or held out by the corporation or even by the directors as authorized to make contracts. It was urged that he had previously entered into contracts of insurance, but it did not appear that they had not been authorized by the board.

[2, 3] As McIntosh had no authority to contract with the defendant for insurance upon the property destroyed, we must inquire whether the unauthorized contract subsequently became effective by ratification. The burden of proving ratification rests upon the party who sets up the contract. Moffitt-West Drug Co. v. Byrd, 92 Fed. 290, 34 C. C. A. 351; 34 Cyc. 351; The Accamee (C. C.) 12 Fed. 345; Mississippi, etc., Steamship Co. v. Swift, 86 Me. 248, 29 Atl. 1063, 41 Am. St. Rep. 545. And whether the particular facts relied upon amount to a ratification of the contract is a question for the court. Dickson v. Bamberger, 107 Ala. 293, 18 South. 290.

The legal existence of the corporation in the case at bar dates from August 31, 1908; that being the time when the letters patent were issued by the Governor and Secretary of State of Florida.

The contract, or alleged contract, of insurance was entered into on March 16, 1909.

The question therefore does not arise whether a corporation not in existence at the time the policy was issued can, upon coming into existence, ratify a contract so made. It has been held in many cases that it is necessary for a valid ratification that the principal should have been in existence at the time the unauthorized act was done.

In Whitney v. Wyman, 101 U. S. 392, 25 L. Ed. 1050, the corporation was in existence when the contract was made, although not having a right at that time to do business as its articles of association had not been filed. Subsequently it ratified the contract and the court held it valid.

[4] It was admitted at the trial in the court below that within a week after the fire McIntosh went to the office of the agent of the insurance company and tendered him legal currency in an amount equal to the premium due on the policy and that the agent refused to accept it. If the tender had been made under the authorization of the corporation of Kline Bros. & Co., it would have amounted to a ratification of the contract in case Kline Bros. & Co., had the right to ratify after the loss. But an officer who makes an unauthorized contract has no more right to ratify it than he has to make it. The party to ratify the contract is the party who had authority to make it. Western National Bank v. Armstrong, 152 U. S. 346, 14 Sup. Ct. 572, 38 L. Ed. 470; Norton v. Shelby County, 118 U. S. 425, 6 Sup. Ct. 1121, 30 L. Ed. 178; Marsh v. Fulton County, 10 Wall. 676, 19 L. Ed. 1040; Hotchen v. Kent, 8 Mich. 526; Bishop on Contracts, § 848. As there is nothing in the record which shows that McIntosh ever was authorized to make the contract, so the record equally fails to disclose that after the contract was made he was ever authorized to ratify it. An agent cannot bind his principal by an unauthorized ratification. Fay

v. Slaughter, 194 Ill. 157, 62 N. E. 592, 56 L. R. A. 564, 88 Am. St. Rep. 148; Britt v. Gordon, 132 Iowa, 431, 108 N. W. 319, 11 Ann. Cas. 407; Deffenbaugh v. Jackson Paper Mfg. Co., 120 Mich. 242, 79 N. W. 197; Driscoll v. Modern Brotherhood of America, 77 Neb. 282, 109 N. W. 158.

[5] Ratification proceeds upon the theory that there was no previous authority. It follows therefore that, if the original authorization of the contract was required to be in a particular mode, the authority to ratify must be conferred in like manner. Wherever the law requires a particular mode of authorization, there can be no valid ratification except in the same manner. Borel v. Rollins, 30 Cal. 408; McCracken v. San Francisco, 16 Cal. 591; Despatch Line of Packets v. Bellamy Mfg. Co., 12 N. H. 205, 37 Am. Dec. 203; Morris v. Ewing, 8 N. D. 99, 76 N. W. 1047; 31 Cyc. 1261. The power to make "all contracts or obligations of any kind" was in the board of directors acting jointly. And "the directors by the consent of each and all of the members of the board may, in writing to be filed with the records and minutes of the company, agree to and transact any business specified in such writing, without the actual holding of a meeting for such purpose; but, in all such instances, the said writing shall be preserved and kept by the secretary of the board." The board of directors never authorized, so far as the record discloses, McIntosh to make the tender. Neither did they proceed to authorize him to do so under the clause which provided that they might act under conditions specified without holding a meeting.

[6] On April 5th, Goldstein & Co., assuming to act as adjusters for Kline Bros. & Co., notified the insurance company of the loss. This too cannot be accepted as a ratification of the contract by Kline Bros. & Co., for there is nothing in the record which shows that Goldstein & Co. were ever authorized by Kline Bros. & Co. to do what they did.

To this letter of Goldstein & Co., the insurance company replied that the letter would be forwarded to its manager for the Southern States at Atlanta, Ga., "who will look after the adjustment." This cannot be regarded as a recognition of the policy for at the time it was written the insurance company had no knowledge of the facts which affected its validity. There can be no ratification where there is not full knowledge of all the material facts. Schutz v. Jordan, 141 U. S. 213, 11 Sup. Ct. 906, 35 L. Ed. 705; Weber v. Bridgman, 113 N. Y. 600, 21 N. E. 985; Foote v. Cotting, 195 Mass. 55, 80 N. E. 55, 15 L. R. A. (N. S.) 693; Sill v. Pate, 230 Ill. 39, 82 N. E. 356; Goodwin v. East Hartford, 70 Conn. 18, 38 Atl. 876; Daley v. Iselin, 218 Pa. 515, 67 Atl. 837; Belcher v. Manchester Building, etc., Ass'n, 74 N. J. Law, 833, 67 Atl. 399.

[7] Then followed on April 27, 1909, a letter addressed to Kline Bros. & Co., written by the manager of the insurance company, notifying the former:

"That we have just learned after diligent inquiry that the above numbered policy * * * which you hold was void from its incipiency. Said policy is not, and never was a contract of this company, and we further notify you that this company hereby specifically denies any liability whatever under said policy."

This amounted to a final repudiation of the contract by the insur-' ance company, and prior to that there is nothing in the record which can be accepted as proof of a ratification by Kline Bros. & Co., of the unauthorized action of McIntosh in taking out the policy on March 16, 1909, even if we assume that his action was capable of ratification after the loss.

According to some of the authorities, in order to sustain the action on this policy, it would be necessary to show not only that there was ratification of the policy by Kline Bros. & Co., but also ratification by the insurance company. The theory being that inasmuch as the obligations of a contract must be mutual, if when the policy was issued Kline Bros. & Co. was not bound, the insurance company was not bound. In Mechem on Agency, § 179, that writer says:

"The principle, however, as has been seen, may by his subsequent affirmance become bound by the contract, but it is obvious that, unless the other party has expressly agreed to that effect, it cannot rest with the principal alone to bind the other party also to the contract. That can be done only by some act on the part of the other party signifying his present consent to be bound."

Upon this proposition the authorities are conflicting, and we do not find it necessary at this time to say whether we regard as correct the rule stated by this author. It is enough for the purposes of this case for us to say that there is no doubt that, until ratification had taken place, the insurance company was free to withdraw from the contract and that it did so withdraw by the notification given on April 27th, which was prior to any valid ratification by Kline Bros. & Co.

In the second case, the title of which stands at the head of this opinion, the essential facts are the same as in the first case considered except that the amount of the policy in question is in the latter case $4,000.

The judgment in each of the cases is affirmed, with costs.